FRION, Appellant, v. COREN and wife, Respondents.*

*March 8—April 4, 1961.*

\* Motion for rehearing denied, with $25 costs, on June 6, 1961.

For the appellant there was a brief by *Glassner, Clancy & Glassner* of Milwaukee, and oral argument by *William E. Glassner, Jr.*

For the respondents the cause was submitted on the brief of *Bendinger, Hayes & Kluwin* of Milwaukee.

MARTIN, C. J. It is appellant's position that respondents are liable under the safe-place statute, sec. 101.06, for failing to construct the railing of the balcony as free from danger as the nature of the building would reasonably permit. The trial court held that while the building is a public building within the meaning of the statute, only such portions thereof as are used in common by the tenants or the public are subject to the statute, citing *Gobar v. Val. Blatz Brewing Co.* (1923), 179 Wis. 256, 259, 191 N. W. 509, where it was held:

"Such part of an entire structure as is put to a public use is not withdrawn from the statute by reason of its being but a fractional part of an entirety, but, on the other hand, the rest of the structure does not become drawn within the statute by the use made of the fractional part."

The building in that case was arranged for but two tenants; plaintiff and his family occupied the upstairs; the first floor was leased to a tenant for saloon purposes.

Sec. 101.01 (12), Stats., provides:

"The term 'public building' as used in secs. 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public, or by three or more tenants."

Considering the application of this section of the statute in *Bewley v. Kipp* (1930), 202 Wis. 411, 414, 233 N. W. 71, the court quoted with approval the above language from the *Gobar Case,* and said :

"It was the purpose of the legislature to secure the safety of buildings where the public gathered or to which persons resorted in numbers. That was the dominant purpose. To this end, and to this end only, was included within the term 'public building' any structure used by three or more tenants."

In that case the plaintiff was injured as the result of the railing of an outside stair barrier giving way. The building contained four apartments leased to four tenants for living quarters and plaintiff and her husband were tenants of one of the apartments. Under the lease the duty of repair was on the tenants and not the landlord. The stairway in question was used only by the tenants of the plaintiff's apartment and this court held there was no liability under the safe-place statute. But the opinion makes it clear that if the defect causing the injury had been a structural one rather than want of repair, there would have been liability (p. 414) :

"A structural defect in such a building might result in its fall, to the injury of many persons. It is plain that this statute does require a building occupied by three or more tenants to be structurally safe."

In *Skrzypczak v. Konieczka* (1937), 224 Wis. 455, 460, 461, 272 N. W. 659, after discussing the *Gobar* and *Bewley Cases*, this court said :

"Under the rules here stated, assuming that the defect here involved was structural, the safe-place statute would apply if the lower floor of the building had been occupied by a lessee instead of by the owner, as the building would then have been occupied by three tenants. . . . Safety of the lessee is the object of the statute, and safety is not in fact

at all dependent on whether one of the occupants is the owner. We are of the opinion that if the defect here involved is deemed structural the case was for the jury under the statute."

The import of these cases is plain. The duty of the owner of a public building to *maintain* the building in a safe condition extends only to such portions as are used or held out to be used by the public or tenants in common or to such other portions of the building as are under his control. But where a defect is structural in character rather than a condition resulting from want of repair or maintenance, even though it exists in a portion of the building not put to public use, the owner may be liable under the safe-place statute.

Appellant attempted to show that this is a place of employment by offering proof that the janitor used the balcony while he engaged in removing and installing screens for the tenants. That fact would not make it a place of employment as to the appellant. It would be a place of employment only during those periods of time it was being so used.

In *Holcomb v. Szymczyk* (1925), 186 Wis. 99, 105, 202 N. W. 188, this court said:

"Care must be taken to distinguish between a 'place of employment' and a 'public building.' Combining regulations as to these unrelated subjects in one statute may be convenient from the draftsman's point of view, but it presents a complex question of statutory construction. In the last clause of the section the statute imposes upon every employer as well as upon every owner and upon every architect certain duties with reference to the construction of a public building. . . . If a building is built, composed of such materials and so designed as to be safe within the meaning of the statute, it must continue to be safe so long as it is maintained in that condition. While the duty of repair and maintenance is cast upon the owner and in certain con-

tingencies upon the employer, their duty with reference to construction is the same as that of the architect."

Appellant made offers of proof by the expert testimony of architects as to what would constitute a safe railing. This was objected to by respondents and the objection was sustained. The trial court was clearly within its discretion in refusing the offer.

"Whether the opinion of a witness should be received, or should be rejected as invading the province of the jury, is a field in which trial courts are permitted to exercise fairly wide discretion." *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 181 (syllabus 9), 83 N. W. (2d) 759.

It is contended by appellant that the trial court should have permitted her to introduce testimony as to the building and safety codes. We have read the offer of proof carefully and set it out, in abstracted form. This is the testimony of Robert Spinti:

"Taking into consideration my experience as an architect and the nature of this building, it is my opinion that the railing was not as safe as the nature of the building would reasonably permit. It should have been higher—42 inches. The basis of my opinion is the state code, I believe sec. Ind 57.07. I am reading from 57.07, par. 3:
" 'At least one half of the required exits, in buildings of more one story, shall be stairways as specified in sec. Ind 51.16. The remaining exits shall be either stairways, or horizontal exits; or fire escapes may be used as exits from floors which are not more than 40 feet above grade if they are placed against blank walls. Every building which accommodates more than one family, or eight persons, above the second story shall have at least two stairways.'
"Then going to sec. Ind 51.20, par. 8 (which is under the general heading of 'fire escapes') :
" '*Railings*. Railings shall be provided on all sides of platforms and stairways, and on both sides of balanced stairways.

Either a railing or a handrail fastened to wall shall be provided on each side of all "B" fire-escape stairways. Railings shall be at least three feet high, measuring vertically from floor of platform or from nose of step.'

"We can go to sec. Ind 51.15, par. 6:

" 'Doors, windows, or other openings which are not exits but which give the appearance of exits shall be effectively guarded.'

"Then sec. Ind 60.20, par. 1:

" 'Railings shall be provided on all open sides of platforms and stairways, and on both sides of balanced stairways. Either a railing or a handrail fastened to wall shall be provided on each side of all "B" type fire-escape stairways. Railings shall be at least three feet high, measuring vertically from floor of platform or from nose of step.'

"I have another basis for my conclusion—city code. 19–18 is Horizontal Exits. A horizontal exit is an opening through an exterior wall . . . (Court: The code defines what's a horizontal exit.) Horizontal exits, other wall openings. 'Platforms, balconies, and bridges being part of a smokeproof stair tower or horizontal exit shall be constructed entirely of noncombustible materials. Such structures shall have an unobstructed width not less than the required width of a smokeproof stair tower, stairway, or horizontal exit, but in no case less than 44 inches, having solid floors and shall be open on at least one side and may have a roof. Open sides of such structures shall be protected with railings not less than three feet, six inches high with horizontal or intermediate rails spaced not more than 11 inches on centers.'

"Without reference to either the city or state code, and entirely in my judgment, I would make the railing 42 inches, assuming that the platform is 20 to 22 feet aboveground. I feel this is the height it should be in order to guard anybody or to prevent anybody from falling over. The average person bends at about 36 inches and I think if you stay above this you are safe."

Reference was also made to the following provisions of sec. Ind 60, 3 Wis. Adm. Code:

"60.001 BUILDINGS AFFECTED BY THESE ORDERS. (1) These orders shall apply to all buildings and structures erected prior to the effective date of the first building code (October 9, 1914) except (a) Private residences, and outbuildings in connection therewith such as barns, garages, etc. . . .

"(2) Provided, however, that if any building or structure, whether above exempted or not, is especially liable to fire, and is so situated as to endanger other buildings or property; or contains any combustible or explosive material dangerous to the safety of any building or premises or the occupants thereof, or endangering or hindering firemen in case of fire; then such building or structure shall be subject to these orders so far as may be necessary to protect adjoining or other buildings and their occupants, and firemen."

We find that all the sections refer to requirements for places of employment, exits, or fire escapes. They have no application in this case and the court properly refused to admit such evidence.

We do not reach the question of damages.

Upon return the trial court will set aside the directed verdict and enter judgment upon the verdict of the jury.

*By the Court.*—Judgment affirmed with instructions.