LEALIOU, Appellant, v. QUATSOE, Respondent.

*November 2—November 28, 1961.*

For the appellant there was a brief and oral argument by *Robert P. Stebbins* of Green Bay.

For the respondent there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, and oral argument by *Joseph P. Holman*.

HALLOWS, J.   Only a question of law is presented, there being no material issue of fact. The appellant contends defendant's building was a public building within the meaning of the safe-place statute because three tenants occupied it and the defendant thereby was obligated to maintain safe the second-floor hallway and stairs which were used by the two tenants in common. The respondent's contention is that the particular place in the building where the accident occurred was not a public building because such area was not used by three or more tenants but only by the two upstairs tenants.

The safe-place statute requires every owner of a public building to construct and to repair or maintain such building so as to render it safe.[1]   Safe, in the context of this

---

[1] "101.06   EMPLOYER'S DUTY TO FURNISH SAFE EMPLOYMENT AND PLACE. Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment

case, means such freedom from danger to life, health, safety, or welfare of frequenters as the nature of the public building will reasonably permit. Sec. 101.01 (11), Stats. What constitutes a public building is defined in sec. 101.01 (12) [2] as including any structure used by three or more tenants. These sections have been construed numerous times by this court and the language in some of the cases lends support to the contention of the respondent. However, such language is not controlling when read in the light of the holding of those cases.

In construing the safe-place statute, at least two fundamental, different approaches have been taken. The owner's duty to maintain the building safe has been said not to exist because either the building, as a whole or that part of the building where the accident happened, was not a public building or maintained as a public building or used by tenants in common or by three tenants. An example of this approach is *Flynn v. Chippewa County* (1944), 244 Wis. 455, 12 N. W. (2d) 683, relied on by the trial court and the respondent. In that case, recovery was denied a prisoner in a jail who was injured when he fell down a stairway in that part of the jail which was not open to the public or maintained for general use by the prisoners. The court said the jail was not a public building. This language is misleading. The court assumed the duty of the owner

---

safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building as to render the same safe."

[2] "101.01 (12) The term 'public building' as used in secs. 101.01 to 101.29 means and includes any structure, including exterior parts of such building, such as a porch, exterior platform, or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or used by the public or by three or more tenants."

to repair or maintain was coextensive with the physical limits of a public building. Because this result was not intended by the legislature, the court confined the term "public building" to only those parts of the jail which were maintained for use by the public. This method of reasoning localizes the owner's duty to repair in terms of a definition of a public building applied only to part of a structure and, consequently, requires that part of the building to be either used by the public or by three or more tenants. This reasoning entirely overlooks the owner's duty to construct the entire building free from structural defects as render the building unsafe.

The other underlying approach was to apply the phrase "public building" to the building as a whole, as the statute requires, and determine, first, whether the structure was a public building and, second, if so, then determine the nature of the owner's duty to the particular plaintiff, either to construct or to repair or to maintain the particular location in a safe condition as the nature of that location would reasonably permit. This approach was taken in *Grossenbach v. Devonshire Realty Co.* (1935), 218 Wis. 633, 261 N. W. 742, which also denied recovery to a person injured in that part of a public building not maintained for general use by the public or the tenants. In that case, the plaintiff lived with the tenant in an apartment building containing 40 tenants and was injured when she fell in the boiler room. Recovery was denied on the ground the plaintiff was a trespasser and not a frequenter when in the boiler room because such room was not being maintained or intended for the use of the tenants or the public. The court, at page 637, stated:

"But the duty of the owner to maintain in a safe condition a building that is a public building under the statute extends only to such parts as are used by the public or by tenants in common."

This statement of the duty of the owner of a public building is not the equivalent of holding three or more tenants must actually use and have a right to use in common that part of a building where an accident happens in order to constitute that location a "public building."

We believe the latter approach of first determining whether the structure is a public building and then determining the owner's particular duty to the plaintiff to be the better method of analysis and more accurately determines the intent of the legislature. It likewise clarifies and brings in sharper focus the distinction which this court has made in the duty of the owner concerning structural defects in the building and his duties to maintain and repair in a safe condition those parts which are not leased to tenants or reserved for his own use. Of course, a landlord may assume by lease a duty to repair to a defined standard, but such duty would be contractual, not statutory. In *Bewley v. Kipp* (1930), 202 Wis. 411, 233 N. W. 71, at page 414, it was said in reference to a four-apartment building with no common passageways or entrances:

"A structural defect in such a building might result in its fall, to the injury of many persons. It is plain that this statute does require a building occupied by three or more tenants to be structurally safe. It is also apparent that the statute requires the landlord to keep in safe repair such portions of the building as may be used in common by the various tenants, their guests, servants, and attendants, such as the common hallway, the elevator, etc. None of the tenants are under obligations to keep these in repair. Unless the legislature did intend to interfere with the common-law duties of the lessees, it did not intend to relieve the lessee of keeping in repair that portion of the building specifically demised and to which he is entitled to the exclusive possession."

We do not consider *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 29 N. W. (2d) 754, and *Hanlon v.*

*St. Francis Seminary* (1953), 264 Wis. 603, 60 N. W. (2d) 381, as authority for the proposition contended for by the respondent. In *Delaney,* recovery was denied to the plaintiff who was injured while walking along a public street when a glass block fell from the front of a building. The court said the building was a public building but did not include the sidewalk, and the duty of the owner extended only to such portions of the building as were used or held out to be used by the public or tenants in common. In *Hanlon,* recovery was denied to the plaintiff who was injured from falling off a retaining wall which abutted a garage on the defendant's property. The retaining wall was held not to be such a structure as would constitute it a public building. In so deciding, the court stated the wall was neither intended nor adapted for use by the public or tenants as a passageway and the character of the use or the intended use made or to be made of the structure was a determining factor. It is true, three cases were distinguished by stating in each of them there was involved a rear porch or platform, all integral parts of the building and intended for use and used by three or more tenants. However, this language of differentiation cannot be used as authority for the implication the respondent draws therefrom.

Reliance is placed on language in *Gupton v. Wauwatosa* (1960), 9 Wis. (2d) 217, 101 N. W. (2d) 104, 102 N. W. (2d) 401 (rehearing), wherein the court referred to the duty of an owner of a public building to construct or maintain a building in safe condition as extending only to such parts of the building as are used by the public or by three or more tenants in common, citing *Hanlon.* On rehearing, referring to this language, the court said we have no doubt, however, that the building as a whole constituted a public building. The holding of *Gupton* was grounded on a place of employment and does not support the respondent's contention.

Respondent also relies on *Bewley v. Kipp, supra; Skrzypczak v. Konieczka* (1937), 224 Wis. 455, 272 N. W. 659; and *Gobar v. Val. Blatz Brewing Co.* (1923), 179 Wis. 256, 191 N. W. 509. These cases were discussed and summarized in *Frion v. Coren* (1961), 13 Wis. (2d) 300, 108 N. W. (2d) 563, which was decided by this court on April 4, 1961, three days before the decision of the trial court and obviously was not known to it. In commenting on these cases, we stated in *Frion,* at page 304:

"The import of these cases is plain. The duty of the owner of a public building to *maintain* the building in a safe condition extends only to such portions as are used or held out to be used by the public or tenants in common or to such other portions of the building as are under his control. But where a defect is structural in character rather than a condition resulting from want of repair or maintenance, even though it exists in a portion of the building not put to public use, the owner may be liable under the safe-place statute."

It is to be noted in this statement, we did not restrict the owner's duty to maintain the portions of a public building as are used or held out to be used by tenants in common to only portions used by a minimum of three tenants.

The rule, thus announced, controls the facts of this case. The defendant's structure was a public building because it was used by at least three tenants. The place where the accident occurred was a common stairway intended for use by and used by the two upstairs tenants and their guests and was not rented or in the possession or control of the tenants. As to this part of the building, the owner had a duty to the frequenter to maintain it in a safe condition.

Since this reasoning requires a reversal, it is unnecessary for us to consider the other points raised by the appellant. We wish to point out, however, it was error to deny the motion to amend the complaint on the ground the statute

of limitations had run on the common-law action for negligence. There was but one cause of action, that for negligence. It was alleged in terms of a violation of the safe-place statute but necessarily included common-law negligence. We have said that sec. 101.06, Stats., does not create a cause of action in favor of anyone but lays down a standard of care and if those to whom it applies violate the provisions of the statutes, they are guilty of negligence. *Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163; *Paluch v. Baldwin Plywood & Veneer Co.* (1957), 1 Wis. (2d) 427, 85 N. W. (2d) 373; *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. (2d) 549, 97 N. W. (2d) 485.

In common parlance, the bench and bar refer to a cause of action at common law and a cause of action under the safe-place statute and frequently the two standards of care are set up separately in the complaint. This is permissible and desirable practice as the issues are more sharply pointed out. However, because in this case it has now been determined that the defendant's duty is subject to the standard of care placed upon him by the safe-place statute, it will be unnecessary to determine the common-law aspect of care because, if the defendant is found to have breached his duty under the safe-place statute, recovery is had for the breach of the higher degree of care, and if it is found the defendant has not breached the higher degree of care, he cannot be held to have breached the standard of care under common law.

*By the Court.*—Judgment reversed.