Christopher L. Raymaker,
Plaintiff-Appellant,†

v.

American Family Mutual Insurance Company
and Mark A. Thomson, Defendants-Respondents,

Claim Management Services, Inc.
and Midwest Security Life Insurance Company,
United Healthcare Services, Inc., Defendants.

Court of Appeals

*No. 2005AP1557. Submitted on briefs February 6, 2006.
—Decided May 2, 2006.*

2006 WI App 117

(Also reported in 718 N.W.2d 154.)

† Petition to review denied 10-10-06.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Erik J. Pless* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Christopher Raymaker appeals a partial summary judgment and an order dismissing his claims for damages against his former landlord and various insurance companies. Based on theories of strict liability for statutory violations and a breach of the residential lease, Raymaker asserted the

landlord, Mark Thomson, was liable for injuries Raymaker sustained after falling from a ladder. We conclude that the safe place statute does not apply; that the landlord-tenant code is not a basis for strict liability, negligence per se, or a private cause of action; and that tort damages cannot be recovered as consequential contract damages here. Accordingly, we affirm the judgment and order.

## Background

¶ 2. The parties stipulated to the relevant facts. Thomson purchased a duplex in Green Bay in 1992. It had been built in 1972, and Thomson lived there from 1992 to 1999. Raymaker rented one unit in September 1999. The lease stated, among other things, that the "Landlord shall have the responsibility to maintain the Premises in good repair at all times."

¶ 3. The attic was accessible through a pull-down, fold-out ladder, presumably built in 1972 as part of the original construction. It appears from a photo that the attic is located over a stairwell and the ladder folds out onto the staircase itself or to the landing at the top of the staircase. Thomson never had a problem with the ladder. On July 16, 2000, Raymaker went to access the attic for the first time of his tenancy. He pulled the ladder down and inspected it for several minutes. After his inspection, Raymaker climbed the ladder and paused on one of the rungs, looking inside the attic.

¶ 4. As Raymaker paused, the rung on which he was standing broke. He fell downward and compressed the next rung, which also broke, and Raymaker fell to the bottom of the stairwell. Raymaker was injured and required back surgery.

¶ 5. Raymaker hired engineer Gary Hutter to inspect the salvaged ladder. Hutter could not determine

whether any defects existed that could have been discovered by inspection prior to the accident. He also had no opinion as to whether Thomson was negligent with regard to the ladder. Hutter did opine that the ladder was negligently designed and manufactured. For example, he stated the connection of the rungs to the side rails was done in such a way so as to decrease each rung's holding strength. The nails used to secure the rungs were neither corrugated nor serrated and lacked gripping power; thus, screws would have been better fasteners. Ultimately, Hutter concluded the ladder failed because the left side of the rung on which Raymaker stood while looking into the attic was not fully in its joint and therefore not fully supported. The securing nails were insufficient to support Raymaker and broke, causing the rung to slip out of its joint entirely and resulting in the fall.

¶ 6. Raymaker sued Thomson and various insurance companies, including Thomson's insurer, American Family. The first complaint, filed in September 2002, alleged Thomson was negligent and failed to construct, maintain, or repair the premises under the safe place statute.[1]

¶ 7. In January 2004, Raymaker moved for summary judgment, arguing Thomson's failure to repair a structural defect was negligence per se under the safe place statute and the landlord-tenant code. American Family responded with its own motion for summary judgment, asserting the safe place statute did not apply, Raymaker could not meet his burden of proof on a negligence claim, and a violation of the landlord-tenant code does not establish negligence per se. In March

---

[1] *See* WIS. STAT. § 101.11. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

2004, Raymaker amended the complaint, formally alleging a violation of WIS. STAT. § 704.07(2), which is part of the landlord-tenant code, and a breach of the residential lease. In May 2004, the court ruled that the safe place statute did not apply, granted American Family's motion to dismiss that part of the complaint, and denied the remainder of both motions.

¶ 8. In March 2005, American Family sought a declaratory order. It asked the court to declare Thomson was not negligent as a matter of law and that Raymaker could not claim tort damages for a breach of the landlord-tenant code or the lease.

¶ 9. After the parties entered their factual stipulation, the court granted American Family's motion. It determined that: Raymaker could not meet the burden of proof on negligence; WISCONSIN STAT. ch. 704 does not establish a private cause of action for its breach; Thomson had no notice of any defects and Raymaker therefore would be unable to meet his burden of proof on forseeability, a prerequisite to contract damages; and the lease did not allow for tort damages in the event of its breach. Accordingly, the court dismissed Raymaker's complaint. Raymaker appeals.

## Discussion

### I. Safe Place Statute

¶ 10. We review summary judgments de novo, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The methodology is well established and need not be repeated here. When the parties stipulate to the facts, only questions of law remain.

*Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 9, 243 Wis. 2d 648, 627 N.W.2d 484. Application of a statute to a set of facts is also a question of law. *World Wide Prosthetic Supply, Inc. v. Mikulsky*, 2002 WI 26, ¶ 8, 251 Wis. 2d 45, 640 N.W.2d 764.

¶ 11. Raymaker asserts the safe place statute applies to impose a duty on Thomson. WISCONSIN STAT. § 101.11(1) provides, in relevant part, that "every owner of . . . a public building now or hereafter constructed shall so construct, repair or maintain such . . . public building as to render the same safe." A public building is defined as "any structure . . . used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use[d] by the public or by 3 or more tenants." WIS. STAT. § 101.01(12).

¶ 12. Raymaker does not dispute that, in WIS. STAT. § 101.01(12), "tenants" refers not to the number of individuals in the building but to the number of units available in the building. *See Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 64–65, 596 N.W.2d 456 (1999). He nonetheless asserts that the statute still applies because the building is used for lodging or occupancy. He also claims a different standard applies when the unsafe condition is a structural problem in a non-public part of a building.

¶ 13. First, we reject the notion that the terms "lodging" or "occupancy" as used in the definition of public building are as broad as Raymaker suggests. If we subscribed to his interpretation, the safe place statute would apply not only to public buildings but to all private residences, including single family homes occupied by their owners. We will not read statutes in a manner that creates absurd results. *See State v. Delaney*, 2003 WI 9, ¶ 15, 259 Wis. 2d 77, 658 N.W.2d

416. Moreover, if Raymaker's interpretation were tenable, there would be no need for the legislature to have defined a public building in terms of a minimum number of tenants. When we analyze a statute, we avoid interpretations that would render parts of the statute superfluous. *See Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992). Raymaker did not live in a public building to which the safe place statute applies.

¶ 14. Raymaker's assertion that case law has established "different responsibilities [on landlords] for structural problems" is based on an incorrect reading of the cases he cites, *Lealiou v. Quatsoe*, 15 Wis. 2d 128, 112 N.W.2d 193 (1961), and *Frion v. Coren*, 13 Wis. 2d 300, 108 N.W.2d 563 (1961). In *Lealiou*, the question was whether the landlord was required to maintain a staircase used by two units. In *Frion*, the question was whether the landlord was negligent for poor construction of a balcony railing used by a single unit.

¶ 15. The distinguishing factor in both cases, however, is that in analyzing the duty of repair, the court started from the premise that each building was a public building. Both cases thus held that where a structural defect exists in a public building, even if the defect is not in an area open to or used by the public, the landlord may still be liable for the defect's repair. Here, we do not have the starting premise of a public building and we therefore decline to apply *Lealiou* or *Frion* to this case.

## II. The Landlord-Tenant Code

¶ 16. Next, we turn to the landlord-tenant code. WISCONSIN STAT. § 704.07(2)(a)3 establishes that a landlord has a duty to "[m]ake all necessary structural

repairs." Raymaker asserts Thomson violated this statute by failing to "repair" the attic ladder,[2] that a violation of this section is negligence per se and imposes strict liability, and that a violation of § 704.07(2) allows a tenant to bring a private cause of action.

### A. Scope of Duty to Repair

■

¶ 17. Raymaker's first assertion is that "the statutory obligation to 'make all necessary structural repairs' applies to all structural defects, latent or obvious alike, and the statute contains no exception." However, the landlord need not make all structural repairs, only all necessary structural repairs, and Raymaker never explains why fixing the ladder was a *necessary* repair. He simply asserts the landlord must make all structural repairs, but this argument completely ignores the qualifier "necessary."

■

¶ 18. More to the point, Wɪs. Sᴛᴀᴛ. § 704.07(2)(a)3 implies that the landlord will have some notice of the defect—latent or obvious—so that he or she can evaluate whether a repair is, in fact, a necessary repair. Given that Thomson never had difficulty with the ladder and Raymaker never expressed concern about the ladder's safety even after inspecting it, we cannot say Thomson had notice of any defects in the ladder.

■

¶ 19. We are therefore not convinced there was a violation of Wɪs. Sᴛᴀᴛ. § 704.07(2)(a)3. However, assum-

---

[2] American Family disputes whether Thomson had a duty to repair the ladder at all. Even though it may have been poorly constructed, American Family asserts that the ladder had never fallen into a state of disrepair relative to its original condition.

ing that a violation occurred, we would alternatively hold, as described in detail below, that a landlord's violation of § 704.07(2)(a)3 does not impose strict liability or establish negligence per se. And while Raymaker also argues that Wis. Stat. ch. 704 permits a private cause of action for a violation of the landlord's duty to repair, we disagree. Rather, the exclusive remedy, provided in the statute, is rent abatement. *See* Wis. Stat. § 704.07(4).

## B. Negligence Per Se

¶ 20. Three questions must be affirmatively answered before we will hold a violation of a statute constitutes negligence per se. *Antwaun A.*, 228 Wis. 2d at 66. The plaintiff must show: "(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability." *Tatur v. Solsrud*, 174 Wis. 2d 735, 743, 498 N.W.2d 232 (1993). We may look to legislative history to discern intent. *Antwaun A.*, 228 Wis. 2d at 67.

¶ 21. Raymaker asserts that he suffered the harm Wis. Stat. § 704.07(2) was designed to prevent and he was within in the class of persons sought to be protected. However, he has failed to establish the necessary legislative intent.

¶ 22. At common law, a landlord had no duty to repair leased premises and the tenant had a limited duty to make "tenantable" repairs only as necessary to prevent waste. 1969 Wis. Laws, ch. 284, § 25. While written leases often included a provision regarding

repair duties, informal tenancies still followed the common law rule. *Id.* Thus, the legislature created Wis. Stat. §§ 704.07(1)-(3).[3] "The purpose of this section is to allocate a duty of repair between the landlord and the tenant in a fair manner." 1969 Wis. Laws, ch. 284, § 25. Accordingly, subsection (2) deals with the landlord's obligations and subsection (3) addresses the tenant's obligations. Nothing in the history suggests any intent by the legislature to impose negligence per se for a violation of § 704.07. Rather, the legislature intended only to alter the common law rule to make the landlord and tenant more evenly share the duties of repair.

### C. Private Cause of Action

¶ 23. The trial court determined there is no private civil cause of action that a tenant can bring when a landlord violates Wis. Stat. § 704.07(2). American Family asserts the sole remedy is rent abatement. In arguing he has a private cause of action, Raymaker cites *Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 61, 224 N.W.2d 389 (1974):

> It is well settled . . . that a private right of action may be predicated upon the violation of a statute containing a mandate to do an act for the benefit of another or prohibiting the doing of an act which might cause injury to another, even though no such right of action is given by the express terms of such statute; this depends upon intent to impose liability, whether the statute purports merely to secure the safety or welfare

---

[3] The predecessor statute of Wis. Stat. § 704.07(4) was Wis. Stat. § 234.17 (1969). Section 704.07(4) was therefore renumbered, not created, as part of the 1969 Act.

of the public generally, or the duty prescribed for the benefit of an individual specially injured by its violation. (Citation omitted.)

¶ 24. *Yanta* involved workplace discrimination against the plaintiff based on her gender. She brought a civil suit for lost wages, emotional distress, and legal fees but at the time, the statutes only permitted prospective relief such as reinstatement. The court noted that, after Yanta filed her civil suit, the legislature changed the statutes to allow a cause of action for lost wages in discrimination cases. Thus, the court stated "the narrow question now before us is whether this court can now take cognizance of the change in legislative attitude, so as to permit the plaintiff to pursue a cause of action for lost wages." *Id.* Ultimately, the court allowed her case to proceed, but only for lost wages and not the other claims. In other words, the court inferred "intent to impose liability" based on the new legislation.

¶ 25. Here, however, Raymaker cites no authority to demonstrate the legislature, in creating Wis. Stat. § 704.07, intended to impose civil liability on landlords violating the section. Indeed, as noted above, the only evidence of legislative intent reveals the sole purpose of making the landlord and tenant evenly share repair duties.

¶ 26. Raymaker also contends the supreme court has established a policy encouraging tenants to be private attorneys general. *See Baierl v. McTaggart*, 2001 WI 107, ¶ 31, 245 Wis. 2d 632, 629 N.W.2d 277. In that case, the landlord Baierl had included a provision requiring tenants to pay his legal fees in the event he had to commence legal action. This is directly contrary to Wis. Admin. Code § ATCP 134.08(3) (Oct. 2004).

¶ 27. In reaching a decision that ultimately voided the entire lease, the court wrote:

[WIS. ADMIN. CODE § ATCP 134.08(3)] was intended not only to prevent the extraction of the concession of reimbursed attorneys fees and costs from tenants by landlords, but also to prevent the chilling effect that the inclusion of a clause claiming to require the payment of attorneys fees and costs has on a tenant's assertion of legal rights. . . .

This regulatory objective is of particular import in light of the overall statutory and regulatory scheme established to encourage private enforcement of legal rights. The enforcement of private legal rights is a significant goal in the realm of landlord-tenant relations. . . . [T]he legislature encourages private litigation by tenants to enforce their legal rights through the attorneys fees and double damages provisions of Wis. Stat. § 100.20(5). Private legal actions by tenants not only enforce the individual rights of the tenant, but allow tenants to serve as "private attorneys general," enforcing the tenant rights preserved under the administrative code. . . . [E]nforcement of the administrative code through individual actions serves a deterrent effect, curbing impermissible conduct by landlords. . . . Such private action is a necessary backup to state enforcement actions given the limited resources available to the state that prevent state actions against every violator.

*Baierl,* 245 Wis. 2d 632, ¶¶ 30–31.

¶ 28. The problem with Raymaker's reliance on *Baierl* is the subject matter. The court was addressing the regulatory scheme of WIS. ADMIN. CODE ch. ATCP 134. The purpose of that chapter is enforcing fair trade practices between landlords and tenants. *See Shands v. Castrovinci,* 115 Wis. 2d 352, 357, 340 N.W.2d 506 (1983). The chapter was adopted pursuant to WIS. STAT.

§ 100.20, not the landlord-tenant code of WIS. STAT. ch. 704. *See* WIS. ADMIN. CODE § ATCP 134.01. We have no basis for viewing WIS. STAT. § 704.07(2) in a similar light.

¶ 29. Raymaker also contends that the exclusive remedy cannot be rent abatement. First, he argues abatement only applies when the premises becomes untenantable, or "rendered unfit to reside in." Raymaker is either relying heavily on the section title, or he fails to read the entire statute. WISCONSIN STAT. § 704.07(4) states:

> UNTENANTABILITY. If the premises become untenantable because of damage by fire, water or other casualty or because of any condition hazardous to health, *or if there is a substantial violation of sub. (2) materially affecting the health or safety of the tenant, the tenant may remove from the premises unless the landlord proceeds promptly to repair or rebuild or eliminate* the health hazard or *the substantial violation of sub. (2) materially affecting the health or safety of the tenant;* or the tenant may remove if the inconvenience to the tenant by reason of the nature and period of repair, rebuilding or elimination would impose undue hardship on the tenant. *If the tenant remains in possession, rent abates to the extent the tenant is deprived of the full normal use of the premises.* . . . (Emphasis added.)

¶ 30. On its face, this statute applies when the landlord substantially violates WIS. STAT. § 704.07(2) and the violation affects the tenant's safety. Moreover, we reject the notion that this applies only when the premises are "unfit to reside in" because the last portion of the quoted section—"if the tenant remains in possession" —contemplates a tenant remaining in the unit. To the extent Raymaker may have focused on the title, "Untenantability," titles of sections and subsections are not part of the statutes. WIS. STAT. § 990.001(6). They may

aid in our interpretation, but the text controls over the titles. *Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996).

¶ 31. Raymaker also argues there must be some remedy available other than rent abatement. However, WIS. STAT. § 704.07(1) states that the section applies in the absence of contrary written provisions in the lease. Thus, the circuit court correctly noted that the lease did not provide a remedy. For there to be a remedy for the breach of the duty to repair other than the remedy in § 704.07, that remedy must be included in the written lease between the parties. *See Halverson v. River Falls Youth Hockey Ass'n*, 226 Wis. 2d 105, 114, 593 N.W.2d 895 (Ct. App. 1999).

¶ 32. WISCONSIN STAT. § 704.07 exists to allocate the duty of repair between the landlord and tenant because, at common law, the landlord had no duty of repair and the tenant was responsible only for repairs necessary to avoid waste. Section 704.07(4) provides the tenant with the remedy of rent abatement if the landlord fails to fulfill his repair duties and to the extent the tenant is deprived of use of the premises, but § 704.07 does not provide a private cause of action.[4]

## III. Breach of the Lease

¶ 33. The lease contained a provision requiring Thomson to "maintain the Premises in good repair at all times." Raymaker asserts Thomson breached this part

---

[4] This only means that a violation of the statute, in and of itself, is not an independent or automatic basis for suit. We do not intend to extinguish any other causes of action, like negligence, that exist independently of WIS. STAT. § 704.07. *See Pagelsdorf v. Safeco Ins. Co.*, 91 Wis. 2d 734, 741–42, 284 N.W.2d 55 (1979) (landlord must exercise ordinary care towards tenants and others on premises with permission).

of the lease and should therefore pay for Raymaker's injuries. He argues his injuries are compensable as consequential damages, not direct damages. American Family responds that there was no breach of the lease because the ladder was not in disrepair and tort damages are not recoverable in a contract action.

¶ 34. We will assume without deciding that Thomson did breach the lease. For a person to recover consequential damages in a contract action, the losses must be "the natural and probable results of the breach." WIS JI—CIVIL 3710 (1994). In other words, there must be a degree of foreseeability. On this stipulated record, we conclude Raymaker's injuries are not the natural and probable results of Thomson's failure to improve the ladder. Given that Thomson had no prior problems, that Raymaker's expert could not determine if a visual inspection would have indicated any needed repairs, and that Raymaker examined the ladder and nonetheless used it instead of asking for repairs, the record establishes conclusively that it was simply unforeseeable that the ladder would collapse and cause injury.

¶ 35. Moreover, we are concerned that Raymaker's claim would obliterate the distinction between contract claims and tort claims. One way of viewing the difference is to recognize that contracts deal with the parties' promises and tort deals with duties imposed by law. DAN B. DOBBS, THE LAW OF TORTS, § 3 (2001). In this sense, the duty of care in repairing the premises actually exists independently of the contract. *See Jacobs v. Karls,* 178 Wis. 2d 268, 276–77, 504 N.W.2d 353 (Ct. App. 1993). The duty thus has far less to do with promises and much more to do with our own supreme court's reformation of the common law rule.

*See Pagelsdorf v. Safeco Ins. Co.*, 91 Wis. 2d 734, 743–44, 284 N.W.2d 55 (1979).

¶ 36. Another way to express the difference is to note that contracts deal primarily with economic matters while torts involve physical harms.[5] DOBBS, THE LAW OF TORTS, § 3. Here the claim is for damages that are solely related back to a physical harm.

¶ 37. Finally, "[t]ort law generally offers a 'broader array' of damages than contract." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 14, 283 Wis. 2d 511, 699 N.W.2d 167. Allowing personal injury damages for a breach of contract, at least on the facts before us, would, in our view, expand contract law so far as to "drown [it] in a sea of tort." *See id.*

¶ 38. Raymaker's appropriate claim for personal injury would be a negligence claim. He, of course, knew this and made such a claim, but the trial court dismissed it after concluding Raymaker could not meet his burden of proof. Raymaker does not challenge that dismissal on appeal.

*By the Court.*—Judgment and order affirmed.

---

[5] Thus, we are not persuaded by Raymaker's cite to *Polidori v. Kordys*, 526 A.2d 230, 235 (N.J. Super. Ct. App. Div. 1987), which said, "There is no limit on the kinds of losses for which damages may be had in a contract action. Thus, personal injury damages may be recoverable in a contact action if they were reasonably foreseeable." Not only does that citation invoke the forseeability factor, but it cites 11 WILLISTON ON CONTRACTS, § 1394, at 475 (3d. ed. 1968). That section deals with personal injury damages following a breach of warranty and specifically addresses the very situation in *Polidori*: the seller's product was defective, the buyer was required to pay an injured third party, and the buyer then sued the seller based on a breach of the product's warranty. There is no warranty in this case.