Terri BOELTER, Plaintiff-Appellant,

v.

Ken TSCHANTZ, Defendant-Respondent.

Court of Appeals

*No. 2009AP1011. Submitted on briefs November 2, 2009.*
*—Decided December 22, 2009.*

2010 WI App 18

(Also reported in 779 N.W.2d 467.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael D. Lawrynk* and *Erik L. Fuehrer* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Timothy J. Helbing* of *Helbing Law Office, LLC*, Appleton.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Terri Boelter appeals a judgment, and an order denying her motion for reconsideration, entered after a trial de novo on claims against her landlord. Boelter seeks double damages, costs, attorney fees, punitive damages, and rent abatement due to claimed improper withholdings from her security deposit and a failure to remedy unsafe conditions. We agree, in part, with Boelter's arguments and remand for further fact-finding, the calculation and awarding of costs, attorney fees, and rent abatement, and consideration of punitive damages.

## BACKGROUND

¶ 2.   Pursuant to a written lease, Boelter and her children resided in a duplex rental owned by Ken Tschantz. The lease term was from July 1, 2006 to June 30, 2007. Boelter completed a condition report at the commencement of her tenancy. She checked the box indicating the dishwasher did not work and hand wrote: "no – slow drain + top melting." The dishwasher was part of a single unit, three-part appliance, consisting of a dishwasher with an electric stovetop sitting atop it, with an oven positioned above the stovetop. The condition of this unit forms the basis of Boelter's unsafe conditions claim.

¶ 3.   Boelter also noted pre-existing damage to a vinyl accordion door in the basement, indicating it was "cracked in spots on the seal." Boelter claims Tschantz improperly withheld sixty dollars from her security

deposit to replace the door after she moved out. Boelter also challenges the amount of an eighty-five-dollar repair charge withheld for fixing her plugged toilet, arguing it was improper for Tschantz to bill her at the rate a professional plumber would have charged.

¶ 4.　Additionally, Tschantz withheld $323.84 from Boelter's security deposit to cover the balance of her quarterly water bill that was due on August 4, 2007. The water bill was in Boelter's name and she made her payments directly to the city water utility. After Tschantz failed to apply the withheld funds to pay the water bill by the due date, Boelter paid the utility directly on August 7. Tschantz then sent a refund check to Boelter on August 29, with an attached Post-it Note stating, "Oh, too bad – no double damages for you."

¶ 5.　Boelter had not yet cashed the refund check when the case was tried to a court commissioner on December 12, 2007. At that hearing, Tschantz testified the check was still good. Boelter subsequently attempted to cash the check, but a stop payment order had been requested on December 11, and Tschantz had finalized the request by appearing at his bank and signing a completed form on December 13.[1] After receiving his copies of affidavits and a motion for further damages, attorney fees, and punitive damages from Boelter, Tschantz provided Boelter a new check in the amount of $383.84.[2] Shortly thereafter, Tschantz requested a circuit court trial. At the September 2008

---

[1] The stop payment request form indicates that requests placed by phone are binding for fourteen days unless the account owner signs the order within the fourteen-day period.

[2] The new check was for sixty dollars more than the original check. We note, however, the court commissioner had granted Boelter a judgment against Tschantz for a total of $1,802.84 in damages, court costs, and attorney fees.

trial, Tschantz asserted he accidentally placed the stop payment request. The circuit court denied Boelter any damages beyond the $383.84 check. The court also disallowed costs and attorney fees, indicating the claimed fees were disproportionate to the original damages claimed. Following the court's denial of a motion for reconsideration, Boelter appeals.

## DISCUSSION

■

¶ 6.   Boelter first argues Tschantz's $323.84 withholding from the security deposit, failure to pay the water bill, delay in sending the refund check, and stop payment request violated WIS. ADMIN. CODE § ATCP 134.06(3)(a)4. (Nov. 2006), which provides:

> A landlord may withhold from a tenant's security deposit only for the following:
>
> . . . .
>
> 4. Payment which the tenant owes for direct utility service provided by a government-owned utility, to the extent that the landlord becomes liable for the tenant's nonpayment.

The interpretation and application of a statute or code provision presents a question of law that we decide independently of the circuit court. *Armour v. Klecker*, 169 Wis. 2d 692, 697, 486 N.W.2d 563 (Ct. App. 1992).

¶ 7.   The parties agree that if Boelter failed to pay her water bill that was due in early August, Tschantz would become liable in November pursuant to WIS. STAT. § 66.0809(3), because the unpaid amount would become a tax lien on Tschantz's property. They dispute, however, whether WIS. ADMIN. CODE § ATCP 134.06(3)(a)4. allowed

Tschantz to withhold the amount of the water bill from the security deposit in July. Tschantz stresses he was required to return the security deposit within twenty-one days after Boelter surrendered the premises and Boelter had been late making prior water utility payments.[3] He also asserts the lease required Boelter to pay any utilities within fifteen days of moving out. The signed lease agreement in the record, however, contains no such provision.

■■

¶ 8. We need not determine which party's interpretation of WIS. ADMIN. CODE § ATCP 134.06(3)(a)4. is correct. Regardless of whether the initial withholding was permissible, Tschantz's subsequent actions constituted an improper withholding. It was unreasonable for Tschantz to withhold the funds but not then pay the utility bill prior to the due date. A landlord cannot indefinitely retain a deposit—merely as a deposit—after a tenant vacates. Tschantz then failed to promptly refund Boelter's deposit after she paid the utility bill directly to stop late fees from accruing on her account. Instead, he mailed it three weeks later with a taunting note. Finally, Tschantz placed a stop payment request on the refund check. Whether intentional or not, this constituted a further improper withholding. *See Armour*, 169 Wis. 2d at 699–701 (§ ATCP 134.06(3)(a) is a strict liability provision). These actions violated § ATCP 134.06(3)(a) and Boelter is therefore entitled to costs and attorney fees, and double damages on the $323.84 withholding and returned check charge from Boelter's bank.

---

[3] Boelter had made a water payment the previous quarter, but the circuit court found that "a portion" of her final bill was comprised of a past due amount.

¶ 9.  We next address Boelter's argument that it was per se unreasonable for Tschantz to charge eighty-five dollars to remove and replace a toilet that was plugged with a Bugs Bunny bath toy. The charge was comprised of a forty dollar service call fee plus forty-five minutes' labor at the rate of sixty dollars per hour. Tschantz justified the charges as "less than or equal to the average charge an area plumber would bill." We agree that a landlord may not charge what a professional laborer would charge for their services.

¶ 10.  WISCONSIN STAT. § 704.07(3) requires tenants who damage the premises to "reimburse the landlord for the reasonable cost thereof; cost to the landlord is presumed reasonable unless proved otherwise by the tenant." Importantly, the statute allows reimbursement only for actual *costs* incurred. A professional plumber would be paying overhead and making a profit in addition to covering actual costs. While the statute presumes costs are reasonable, once Boelter challenged the charge, Tschantz did not identify any actual costs to him. Further, we note Tschantz paid his son's company fifteen dollars per hour for general handyman repairs to the rental unit. Because on appeal Boelter concedes that to be a reasonable rate, and agrees to such payment, we conclude Tschantz was entitled to withhold twelve dollars for his forty-five minutes of labor clearing the toilet. Boelter is entitled to double damages on the remaining seventy-three dollars, plus costs and attorney fees, for the improper withholding of the excessive plumbing charge from the security deposit.

■

¶ 11.  Boelter further argues Tschantz improperly withheld sixty dollars from her security deposit for replacing a vinyl accordion door. She asserts the charge

was improper because she noted existing damage to the door on the condition report. Wisconsin Admin. Code § ATCP 134.06(3)(c) precludes a landlord from withholding for normal wear and tear or other losses for which the tenant cannot reasonably be held responsible.

¶ 12.   We reject part of this claim because Boelter exaggerates the charges. The sixty dollar fee was for four hours' labor by Tschantz's son's company at fifteen dollars per hour. The son's testimony and invoice indicate there were several other repairs performed during that time, with one hour apportioned to the accordion door. Thus, only fifteen dollars was deducted for replacing the accordion door.

¶ 13.   At trial, Tschantz's son testified the door was "ripped a little bit . . . there was vinyl on it and it was separating." However, his son did not know how or when the door was damaged or how old it was. Tschantz's son's testimony is consistent with Boelter's notation that the vinyl was "cracked in spots" when she moved in. There is simply no evidence of damage beyond the existing damage or normal wear and tear.

¶ 14.   The circuit court did not address whether the damage was pre-existing or the result of ordinary wear and tear. The court only concluded "[t]hat the charge of $60.00 to repair the accordion door was reasonable." In Boelter's motion for reconsideration, she noted the court made no finding as to the cause or timing of the damage, but the court again did not address the issue in its order denying the motion. Because Tschantz presented no evidence Boelter caused further damage to the door, she is entitled to costs, attorney fees, and double damages on fifteen dollars.

¶ 15. We next address Boelter's claim for rent abatement based on the condition of the combined dishwasher/stovetop/oven unit. Paul Popke, a partner at Economy Appliance Service who had worked on the appliance, testified, "The heat from the cook top got so hot that it melted the plastic [inside the dishwasher] and the weight of the plastic just hung itself down and fell into the inside." Popke indicated the plastic had bubbled down four to six inches and the top rack of the dishwasher was unusable.

¶ 16. Popke and his business partner, Judith Greiczek, both believed there was a danger the dishwasher plastic could burst open and harm someone if the electric cook top was in use. Greiczek testified that while at the apartment on September 5, 2006, she and Popke advised Boelter not to use the stove and dishwasher at the same time. Greiczek testified she noted the warning to the tenants on the invoice and also called Tschantz and spoke to him prior to mailing the invoice to inform him of the warnings provided.[4] Greiczek testified she and Popke eventually decided to stop providing service to Tschantz because of

> his refusal to believe that his appliances were [not] still repairable and we, because of liability reasons, refused to do any more work over there because of the fact that the wiring being very brittle, the dishwasher was a danger, . . . especially if the cook top was being used which sat right on top of the dishwasher.

Greiczek further explained they could not find any replacement parts for the appliance because they could

---

[4] The other unit in Tschantz's duplex had the same type of appliance, with similar damage.

217

not find a model number and the manufacturer had stopped producing them about twenty years ago.

¶ 17. Additionally, the Appleton Housing Authority sent Tschantz a notice dated May 17, 2007, informing him Boelter's apartment had four conditions that violated the housing quality standards. The letter noted: "Stove and oven will need to be replaced, it does not work properly and has been deemed too dangerous to use by a professional appliance company. Please see attached statement from Economy Appliance." The letter stated Tschantz needed to remedy the violations within thirty days to prevent the suspension of payments from the Section 8 Housing Choice Voucher Program.

¶ 18. Tschantz responded by sending an angry letter to Greiczek complaining about violating his customer confidentiality. He further complained it was the "second time you did me a dis-service. The first time was the refrigerator issue on the 819 side (the black lady and your concern for the kids)."[5] Tschantz did not replace Boelter's dishwasher/stovetop/oven in response to the housing authority's letter. Rather, he explained at trial that he decided to delay replacement because he was not renewing Boelter's lease, which would expire just a couple weeks beyond the thirty-day deadline. The circuit court denied any rent abatement, concluding "the premises were in reasonable working order."

¶ 19. Rent abatement is a remedy made available by WIS. STAT. § 704.07(4), which provides:

> [I]f there is a substantial violation of sub. (2) materially affecting the health or safety of the tenant, . . . [i]f the

---

[5] Tschantz indicated he was upset because he had lost a claim in court based on what was noted on the neighbor lady's repair invoice.

> tenant remains in possession, rent abates to the extent the tenant is deprived of the full normal use of the premises. This section does not authorize rent to be withheld in full, if the tenant remains in possession.

As material here, § 704.07(2)(a)4. states a landlord has a duty to "repair or replace any plumbing, electrical wiring, machinery, or equipment furnished with the premises and no longer in reasonable working condition."

¶ 20. We cannot agree that the dishwasher/stovetop/oven appliance was in reasonable working condition. The stovetop and oven both functioned and Tschantz had them repaired when they broke. The dishwasher partially worked—the top drawer was unusable. Nonetheless, Boelter was advised the unit presented a safety hazard and she should not use the electric stovetop if the dishwasher was running. An appliance that cannot be used as intended without creating a risk of fire or electrocution is not in reasonable working condition. Further, such a condition constitutes a "substantial violation . . . materially affecting the health or safety of the tenant." WIS. STAT. § 704.07(4). Boelter was effectively deprived of the use of the dishwasher and stovetop furnished with her rental unit. With every use she was forced to play a game of Russian roulette, not knowing whether the dishwasher water would breach (or had already breached) into the electrical components of the stovetop. Boelter is therefore entitled to rent abatement.

¶ 21. Tschantz argues any abatement should apply only to the final two weeks of the tenancy, after the expiration of the thirty-day remedy period from the housing department. Boelter, on the other hand, contends abatement should run the entire length of the

219

lease, because she informed Tschantz that the dishwasher was melted by noting it on the check-in form. We conclude abatement is appropriate going back to at least shortly after Tschantz received the notice from the housing authority.[6] At that point, Tschantz was on notice both that the appliance was damaged and that it posed a substantial safety hazard. *See Raymaker v. American Family Mut. Ins. Co.*, 2006 WI App 117, ¶¶ 17–18, 293 Wis. 2d 392, 718 N.W.2d 154.

¶ 22.   Abatement may be appropriate commencing early September 2006, when Greiczek and Popke reported their safety concerns to Tschantz. However, Tschantz's testimony suggests he was not sure whether the safety concerns related to Boelter's appliance or just her neighbor's. The circuit court will need to resolve this potential factual discrepancy. Further, while Boelter reported that the dishwasher was melted at the outset of her tenancy, it is not clear whether the dishwasher's condition worsened after that point, or whether Tschantz should have known that it presented a substantial safety hazard from the beginning. These factual questions must also be left to the circuit court. Thus, on remand, the court will need to determine when abatement should begin and in what amount the rent will be abated. The rent should abate proportionally to the extent the loss of use of the dishwasher and stovetop deprived Boelter of her full normal use of the premises. *See* Wis. Stat. § 704.07(4); *see also Raymaker*, 293 Wis. 2d 392, ¶ 30 (abatement does not apply only when the premises are "unfit to reside in").

---

[6] Tschantz should have immediately replaced the dangerous appliance upon notice, but he can reasonably be expected to have needed a short time period to accomplish the replacement.

¶ 23.   We next address Boelter's punitive damages claim and conclude the circuit court applied an improper legal standard in denying it. Tschantz concedes the circuit court applied the wrong legal standard. "The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." WIS. STAT. § 895.043(3). If the fact finder concludes punitive damages are available and decides to award them, it then determines the amount of punitive damages by considering factors such as the grievousness of the defendant's acts, the degree of malice involved, the potential damage which might have been done by such acts as well as the actual damage, and the defendant's ability to pay. *Gianoli v. Pfleiderer*, 209 Wis. 2d 509, 528, 563 N.W.2d 562 (Ct. App. 1997); WISCONSIN JI—CIVIL 1707.1 (2009).

¶ 24.   The circuit court did not address whether Tschantz's conduct—refunding the water bill funds with the taunting Post-it Note, and then requesting the stop payment and testifying the check was still good—was either malicious or an intentional disregard of Boelter's rights. Rather, the court concluded "[t]hat this is not a case w[h]ere the landlord's actions were so grievousness [sic] to support punitive damages nor of such a degree of malice to support punitive damages." By applying two of the factors for determining the *amount* of damages to determine whether punitive damages could be awarded, the circuit court applied an improper legal standard. On remand the court shall reconsider Boelter's punitive damages claim under the correct standard.

¶ 25.   We further conclude that Tschantz's testimony regarding the facts underlying the punitive damages claim was patently false and any implicit finding to the contrary is clearly erroneous. *See* WIS. STAT. § 805.17(2). In her motion for reconsideration, Boelter noted the court did not address whether Tschantz's conduct was malicious or intentional. The court did not directly respond to this issue in its order denying the motion, but indicated generally:   "The Court must weigh the evidence and judge the credibility of the witnesses. This Court having done so denies plaintiff's motion . . . ."

¶ 26.   Tschantz claims the stop payment request was placed accidentally. At trial, he explained he used to do occasional financial work for an unnamed person running an unnamed flooring business. Tschantz testified the person had moved away but contacted Tschantz and asked him to cancel a check for him. Tschantz agreed, as long as the person called the bank in advance. Tschantz surmised that when he was at the bank and conducting personal business as well, the teller took his membership card without him noticing and then mistakenly applied the stop payment to Boelter's check, which was in a similar amount to the check his unnamed acquaintance wanted cancelled. Tschantz further testified he later learned the unnamed person did not have an account at Tschantz's bank, and, additionally, no longer needed the check to be cancelled anyway. When asked why he did not respond to discovery requests pertaining to the stop payment request, Tschantz testified he was subsequently unable to locate or contact the unnamed acquaintance.

¶ 27.   A bank representative testified to the obvious at trial:   the teller could not have known the check information to cancel unless the customer provided it.

To begin with, according to Tschantz's story, it would have been the unnamed person who called the bank and provided the check information. Even assuming the unnamed person somehow placed a stop payment on Boelter's check on Tschantz's account because the check numbers were coincidentally the same,[7] when Tschantz came to the bank, he would then have had to provide the check information that is written on the stop payment form he signed. In addition to the check number, that document shows Terri Boelter as the payee and identifies the exact payment amount. Because Boelter had not yet cashed the check, it was impossible for the bank to already have that information. Thus, Tschantz's elaborate story is incredible and we reject it as a matter of law. *See Hallin v. Hallin*, 228 Wis. 2d 250, 258–59, 596 N.W.2d 818 (Ct. App. 1999). Therefore, when reconsidering whether to award punitive damages, the circuit court must consider that Tschantz intentionally stopped payment on the check and then lied that it was still good.

¶ 28.   As we noted at the outset, the circuit court denied attorney fees because it concluded the requested amount was too far out of proportion to the actual damages claimed. That is an inappropriate legal standard. WISCONSIN STAT. § 100.20(5) provides that the tenant "*shall* recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee." (Emphasis added.) Thus, an attorney fee award is mandatory on successful claims. *Shands v. Castrovinci*, 115 Wis. 2d 352, 357, 340 N.W.2d 506 (1983). The costs and attorney fees in a residential

---

[7] Tschantz's check to Boelter had a four-digit number:   6961.

landlord-tenant case will frequently far exceed the actual damages claimed. That is precisely why their recovery is allowed. The awards encourage tenants and their attorneys to prosecute claims that might otherwise not be financially feasible. *Id.* In this regard, the tenants and their attorneys act as private attorneys general on behalf of the State. *Id.* at 358. This policy serves a deterrent effect and is necessary because landlords hold unequal bargaining power and the State has inadequate resources to prosecute all violators. *Id.*; *Armour,* 169 Wis. 2d at 701.

¶ 29. On remand, the circuit court shall award Boelter her costs and reasonable attorney fees[8] incurred on all successful claims, except for rent abatement and punitive damages,[9] including those costs and fees incurred on the motion for reconsideration. The court shall also award Boelter's reasonable attorney fees incurred on appeal, *see Shands,* 115 Wis. 2d at 359,

[8] Reasonable attorney fees shall be awarded according to the lodestar method. *Kolupar v. Wilde Pontiac Cadillac, Inc.,* 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58. This method requires the circuit court to first determine a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.,* ¶ 28. The court may then adjust this number, the lodestar, up or down by considering other relevant factors. *Id.,* ¶ 29.

[9] Double damages, costs, and attorney fees are not available on rent abatement claims because they arise under WIS. STAT. § 704.07 rather than WIS. ADMIN. CODE ATCP ch. 134 (Nov. 2006). *See Raymaker v. American Family Mut. Ins. Co.,* 2006 WI App 117, ¶ 28, 293 Wis. 2d 392, 718 N.W.2d 154. Further, double damages, costs and attorney fees are not allowable on the punitive damages claim because, if awarded, punitive damages do not constitute an actual "pecuniary loss" under WIS. STAT. § 100.20(5).

with the same two exceptions. Further, Boelter shall recover her appellate costs under WIS. STAT. RULE 809.25(1)(b).

*By the Court.*—Judgment and order reversed and cause remanded with directions; costs awarded.