Jonathon ARMOUR, and Tami Peloquin, Plaintiffs-
Appellants-Cross Respondents,

v.

Gerry KLECKER, Defendant-Respondent-Cross
Appellant.

Court of Appeals

*No. 91–3051–FT. Submitted on briefs May 12, 1992.—Decided
June 9, 1992.*

(Also reported in 486 N.W.2d 563.)

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *John M. O'Boyle* of *Davison & Vlack* of River Falls.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Charles B. Harris* of the *Law Offices of Charles B. Harris, S.C.* of Hudson.

Cane, P.J., LaRocque and Myse, JJ.[1]

MYSE, J.   Jonathon Armour and Tami Peloquin appeal a judgment that awarded them a portion of their security deposit, but denied double damages and attorney fees.[2] They contend that the trial court erred

---

[1] This is a three-judge appeal pursuant to the chief judge's order of June 3, 1992.

[2] This is an expedited appeal under Rule 809.17.

because pursuant to sec. 100.20(5), Stats., the trial court was required to award them double damages and attorney fees. We conclude that because the wrongful withholding of a tenant's security deposit is a violation of Wis. Adm. Code sec. Ag 134.06(3), Armour and Peloquin are entitled to double damages and attorney fees under sec. 100.20(5). Accordingly, we reverse the judgment and remand the cause for a determination of costs and reasonable attorney fees for both the trial and this appeal. Because Klecker has withdrawn issues he raised in his cross-appeal, we do not address the cross-appeal.

Armour and Peloquin leased an apartment from Gerry Klecker. The lease was not for a fixed term, but contained a provision prohibiting Armour and Peloquin from moving out between the months of November and April. The lease also contained a provision stating that the security deposit would not be returned unless Klecker received sixty days' notice that the apartment was to be vacated. Armour and Peloquin paid a $400 security deposit to Klecker.

Armour and Peloquin moved into their apartment around May 1990. Around October 1990, they noticed mold growing on the walls of the bedrooms that were located below ground level. One of these bedrooms was occupied by their four-year-old daughter. The other bedroom was occupied by Armour and Peloquin and their four-month-old son. According to Armour and Peloquin, they attempted to get rid of the mold by cleaning the walls and using a dehumidifier. The mold, however, grew back by December 1990. Peloquin testified at trial that she consulted two doctors who informed her that the mold would be a health hazard to her two children.[3]

---

[3]There was no hearsay objection to this testimony at trial nor is there any argument made concerning it on appeal.

On January 3, 1991, Armour and Peloquin gave Klecker written notice that they would be vacating their apartment by January 31, 1991. They moved out on January 30, 1991. Klecker then sent Armour and Peloquin a letter informing them that he would not release their $400 security deposit and that they in fact owed him $192.67. Klecker reached this figure by charging $168.22 for a final water/sewer bill, a $35 late fee for November 1990 rent, $232.50 in lost rents, $15.95 for reasonable costs of advertising the premises, $125 rental fee paid to the apartment manager and $16 for the cost of rehanging curtain rods that had been taken down.

The trial court found that Armour and Peloquin were entitled to a return of $196.78 of their security deposit. Implicitly, the trial court found that Armour and Peloquin were entitled to vacate the premises at a time prohibited in the lease and without the notice required in the lease because the mold rendered the premises uninhabitable. The trial court, therefore, found that they were not responsible for the cost of finding a replacement tenant and lost rents. It did, however, find that Armour and Peloquin were responsible for $203.22, based on their admission that they owed the $168.22 final water/sewer bill and the $35 charge for the admittedly late payment of the November rent. The court denied Armour's and Peloquin's request for double damages and attorney fees.

First, we address Klecker's assertion that Armour and Peloquin have waived their right to challenge on appeal the trial court's conclusions because they did not bring a motion for reconsideration under sec. 805.17(3), Stats. This issue, involving the interpretation of sec. 805.17(3), is a question of law. *Gonzalez v. Teskey,* 160 Wis. 2d 1, 7–8, 465 N.W.2d 525, 528 (Ct. App. 1990).

Section 805.17(3), Stats. (effective July 1, 1991), provides in relevant part: "Upon its own motion or the motion of a party made not later than 20 days after entry of judgment, the court may amend its findings or conclusions or make additional findings or conclusions and may amend the judgment accordingly. The motion may be made with a motion for a new trial." Nothing in the statute suggests that an appellant must bring a motion for reconsideration to preserve his right to appeal a legal conclusion reached by the trial court. Consequently, we reject Klecker's argument that the failure to bring such a motion is fatal to Armour and Peloquin's appeal.

Armour and Peloquin argue that once the trial court found that Klecker wrongfully withheld portions of their security deposit, it was required to award them double damages and attorney fees. This issue involves the interpretation of sec. 100.20(5), Stats., and Wis. Adm. Code sec. Ag 134.06, and their application to these particular facts.

The interpretation and application of a statute to a particular set of facts are questions of law that we review de novo. *Gonzalez,* 160 Wis. 2d at 7-8, 465 N.W.2d at 528. Likewise, the construction of an administrative rule or regulation presents a question of law that we decide without deferring to the trial court. *Moonlight v. Boyce,* 125 Wis. 2d 298, 303, 372 N.W.2d 479, 483 (Ct. App. 1985).

Section 100.20(5), Stats., provides: "Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary

697

loss, together with costs, including a reasonable attorney's fee." Wisconsin Adm. Code sec. Ag 134.06 was adopted pursuant to sec. 100.20. Therefore, if a court determines that a landlord has violated Wis. Adm. Code sec. Ag 134.06, it is required under the plain unambiguous language of sec. 100.20(5), Stats., to award double damages and attorney fees. *See Shands v. Castrovinci,* 115 Wis. 2d 352, 357, 340 N.W.2d 506, 508–09 (1983).

The remaining question is whether Klecker violated Wisconsin Adm. Code sec. Ag 134.06. Wisconsin Adm. Code sec. Ag 134.06(4)(a) requires that a landlord, within twenty-one days after the tenant surrenders the premises, make a written statement accounting for all amounts withheld. "The statement shall describe each item of physical damages or other claim made against the security deposit, and the amount withheld as reasonable compensation for each item of claim." Wis. Adm. Code sec. Ag 134.06(4)(a). It is undisputed that Klecker provided the proper notice.

The code, however, also specifically lists the claims that a landlord may properly make against a security deposit. Wisconsin Adm. Code sec. Ag 134.06(3) provides:

> (a) Except for other reasons clearly agreed upon in writing at the time the rental agreement is entered into, other than in a form provision, security deposits may be withheld only for tenant damage, waste or neglect of the premises, or the nonpayment of:
> 1. Rent for which the tenant is legally responsible, subject to s. 704.29, Stats.
> 2. Actual amounts owed for utility service provided by the landlord under terms of the rental agreement and not included in the rent.

    3.  Actual amounts owed by the tenant for direct utility service provided by a government-owned utility, to the extent that the landlord becomes liable for the tenant's nonpayment.

If a landlord withholds amounts that do not represent an allowable claim under this section, he is in violation of the code.

The amount at issue on appeal represents Klecker's claims for lost rents, costs of reletting the premises and the cost of rehanging curtain rods. The trial court found that the premises were uninhabitable and, therefore, Armour and Peloquin were entitled to break the lease and leave the premises. Consequently, Armour and Peloquin were not "legally responsible" for any further rent. By withholding rent for which Armour and Peloquin were not legally responsible, Klecker violated this rule.

It is no defense to this code provision that the landlord believed he had a claim against Armour and Peloquin for lost rents. First we note that the code contains no language indicating that such a belief constitutes a defense to a claim for double damages and attorney fees.

Moreover, we conclude that precluding the award of double damages and attorney fees in this case would undermine the purposes and policies behind sec. 100.20(5), Stats. These purposes and policies were set forth at length in *Shands* where the court stated:

> First, the recovery of double damages and attorney fees encourages injured tenants to bring legal actions to enforce their rights under the administrative regulations. Often the amount of pecuniary loss is small compared with the cost of litigation. Thus, it was necessary to make the recovery large enough to give tenants an incentive to bring suit. The award of attorney fees encourages attorneys to pursue tenants'

claims where the anticipated monetary recovery would not justify the expense of legal action. While attorneys generally are willing to perform pro bono legal services in appropriate cases, we recognize that practical considerations limit the number of such suits.

Second, the tenant who sues under the statute acts as a "private attorney general" to enforce the tenants' rights set forth in the administrative regulations. Thus, the individual tenant not only enforces his or her individual rights, but the aggregate effect of individual suits enforces the public's rights.

Third, tenant suits have the effect of deterring impermissible conduct by landlords because, if they violate the administrative regulations, they will be subject to double damages and will be responsible for costs, including attorney fees. The deterrent effect of the statute strengthens the bargaining power of tenants in dealing with landlords.

Finally, in an amicus brief the Wisconsin Department of Justice noted that private tenant actions provide a necessary backup to the state's enforcement powers under sec. 100.20, Stats. The department pointed out that the sheer number of violations prevent it from proceeding against all violators. Private tenant actions thus constitute an enforcement mechanism reinforcing that of the justice department.

*Id.* at 357–59, 340 N.W.2d at 509. If we were to hold that a landlord's belief that he was entitled to the claim allowed him to escape the penalty of double damages and attorney's fees, the tenant would likely be discouraged from bringing suit because even if he or she prevailed he or she might not be able to recover the cost of bringing the lawsuit.

700

We recognize that requiring a landlord to pay double damages and attorney fees when he believes he has a claim to the security deposit is harsh. This result, however, is consistent with the purpose of the regulations, which is to discourage the retention of security deposits except in the clearest of cases.

In addition, the landlord has alternatives available. The landlord, who believes he has a claim for rent that the tenants are legally obligated to pay, but does not wish to be subject to the penalties provided by statute, can return the security deposit and sue the tenant for damages. Although collection in such cases may be difficult, this consequence furthers the intended purpose of strengthening the tenant's bargaining power in dealing with landlords.

In addition to withholding rent for which Armour and Peloquin were not legally responsible, Klecker also withheld money from the security deposit for costs he incurred in reletting the premises. The cost of reletting the premises is not an allowable cost under Wis. Adm. Code sec. Ag 134.06(3) because it is neither one of the specifically enumerated costs in that section nor was it agreed upon in writing in the lease. Therefore, Klecker violated the code by retaining a portion of Armour and Peloquin's security deposit for the cost of reletting the premises.

Armour and Peloquin have prevailed on their claim under sec. 100.20(5), Stats. We therefore remand with directions for the court to double the damages awarded and to determine the costs and reasonable attorney fees incurred in bringing their security deposit claim and this appeal. *See Boyce,* 125 Wis. 2d at 307, 372 N.W.2d at 485. We also note that the court did not make a finding regarding the propriety of the $16 withheld to rehang the

701

curtain rods. On remand we direct that such a finding be made and the judgment be modified accordingly.

*By the Court.*—Judgment reversed and cause remanded with directions.