COURT OF APPEALS
DECISION
DATED AND FILED

October 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP2066**

STATE OF WISCONSIN

Cir. Ct. No.  2019SC993

IN COURT OF APPEALS
DISTRICT III

CLINT HEIMAN,

   PLAINTIFF-RESPONDENT,

 V.

CHRIS ROE AND KELLY ROE,

   DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Eau Claire County:  MICHAEL A. SCHUMACHER, Judge.  *Affirmed in part; reversed in part and cause remanded with directions*.

¶1     GILL, J.[1]  Chris and Kelly Roe appeal a circuit court judgment dismissing their counterclaims against their former landlord, Clint Heiman.  The

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Roes argue that the court erred when it determined that Heiman did not unlawfully retain the Roes' security deposit in violation of WIS. ADMIN. CODE § ATCP 134.06(4)(a) (Oct. 2021).[2] The Roes also challenge the court's ruling that although Heiman violated WIS. ADMIN. CODE § ATCP 134.09(8)(c) by compounding their late fees, the Roes did not suffer a pecuniary loss.

¶2 We disagree with the circuit court's conclusion that Heiman complied with WIS. ADMIN. CODE § ATCP 134.06(4)(a). However, we agree with the court that the Roes did not suffer any damages under WIS. ADMIN. CODE § ATCP 134.09(8)(c). We therefore affirm in part, reverse in part, and remand for the circuit court to calculate the Roes' damages for Heiman's violation of § ATCP 134.06(4)(a).

## BACKGROUND

¶3 The material facts leading up to this appeal are undisputed. Beginning in 2009, the Roes rented a house from Heiman. By 2012, the Roes and Heiman entered into a written agreement to lease the same house.[3] In addition to a one-time $700 security deposit, the lease stated that rent was $700 and was due by the fifth of each month. The lease included a provision stating there would be a

---

[2] All references to the Wisconsin Administrative Code are to the October 2021 register unless otherwise noted. Although we cite to the October 2021 version of WIS. ADMIN. CODE ch. ATCP 134, no relevant changes to that chapter occurred between the events material to this case and October 2021.

[3] Both parties cite the 2012 lease agreement as if it was still binding in 2018 when the present dispute began. The lease agreement stated that the Roes would lease the house for a one-year term, beginning in July 2012. It is unclear from the record if the lease agreement applied beyond July 2013. Ultimately, the lease agreement does not change our analysis or the outcome of the appeal. Therefore, we will assume without deciding that the lease agreement still applied during the time period at issue in this appeal.

"[$]5.00 per day late fee after" the fifth of each month if rent was not paid. The lease also required the Roes to pay for all utilities, including water and electric. From 2009 until 2017, there were no legal issues between the parties.

¶4      In 2017, the Roes missed four months' payment of rent. The Roes also failed to pay rent from November 2018 through March 2019. Additionally, during these time periods, the Roes failed to timely pay certain utility bills. The parties entered into at least two written agreements for the Roes to pay Heiman back for the 2017 and 2018-2019 missed rent and utility payments, and by early June 2019, the Roes had paid him over $6,000 in past-due rent and past-due utility bills.[4]

¶5      Nonetheless, on June 12, 2019, Heiman served the Roes with a five-day eviction notice by both mail and hand delivery. The eviction notice stated that the Roes owed $3,604 in "unpaid rent and other charges" as well as $486.51 for "past water bill and current bill for water[/]sewer." Heiman subsequently filed a small claims action against the Roes on June 17, 2019. He demanded money damages in the amount of $4,090.51, as well as an eviction order against the Roes. The circuit court granted Heiman's request for the Roes' eviction on July 18, 2019.[5]

¶6      Attached to Heiman's complaint were two exhibits titled "Handwritten Account Statement" (Exhibit 1) and "Handwritten Payment

---

[4] The circuit court found that the Roes never paid any of the compounded late fees. The Roes do not contest this finding on appeal. We will therefore assume without deciding that the roughly $6,000 payment was for owed rent, utility bills, and/or non-compounded late fees.

[5] The Honorable John F. Manydeeds issued the eviction order.

Agreement" (Exhibit 2).  Both exhibits showed calculations that Heiman used for the late fee charges.  Exhibit 1 was signed by both parties on November 27, 2017, and Exhibit 2 was signed by the parties in April 2019.  The Exhibit 2 calculations determined that the Roes owed $2,250 in late fees by April 2019.  Specifically, Heiman calculated:

> Nov[. 2018]—150 days late—[$]750 [in late fees]
>
> Dec[. 2018]—120 days late—[$]600 [in late fees]
>
> Jan[. 2019]—90 days late—[$]450 [in late fees]
>
> Feb[. 2019]—60 days late—[$]300 [in late fees]
>
> March [2019]—30 days late—[$]150 [in late fees]

¶7      Both parties agree that Heiman was compounding the late fees.  In other words, Heiman was charging multiple late fees per day.  Exhibit 2 also calculated that the Roes owed $365.57 for a "delinquent water bill on taxes," as well as $486.51 for a "city water bill."  In both exhibits, Heiman offered to stop, and forgive, the late fees if the Roes would pay the rent and water bills owed.

¶8      Heiman later sent a handwritten letter dated July 30, 2019, to the Roes stating:  "You are not getting your security deposit back[.]  [T]he money is being used for the water bills [and the] clean up of [the] yard.  [T]he remainder that you will owe me will be settled in court on 8-5-19."

¶9      The Roes filed an answer and counterclaims against Heiman.  As relevant here, they alleged that Heiman violated WIS. ADMIN. CODE § ATCP 134.09(8)(c) by "charging a late fee for non-payment of late fees," thus entitling them to double damages and costs pursuant to WIS. STAT. § 100.20(5).  Further, they asserted that Heiman "unlawfully withheld [the Roes'] security deposit

4

without providing a writ[ten] descri[ption of] the amounts withheld in violation of" WIS. ADMIN. CODE § ATCP 134.06(4)(a), and thus entitling them to further damages and costs under § 100.20(5).

¶10     A trial was held before a court commissioner to determine damages. There, Heiman increased his claim for late fees to $6,830. The commissioner determined that the lease did not provide for that type of compounding and that "the compounding calculated by [Heiman] would be a penalty under [WIS. ADMIN. CODE §] ATCP 134.09(8)(c)." The commissioner therefore determined that under the terms of the lease, the Roes owed Heiman $322 in late fees. The commissioner also determined that Heiman did not violate WIS. ADMIN. CODE § ATCP 134.06(4)(a) by withholding the Roes' security deposit. In total, the commissioner awarded Heiman $5,296.84 in damages, including the $322 in late fees.

¶11     The Roes requested a de novo hearing which was held before the circuit court, after which the parties submitted briefs.[6] At the hearing, Heiman abandoned his demand for compounded late fees, and the parties stipulated that $322 was the amount of actual late fees owed. Ultimately, the court awarded Heiman $4,096.03 in damages, which encompassed $1,083.16 for the unpaid water bill and $322 in late fees.

¶12     As to the Roes' counterclaim regarding Heiman's withholding of their security deposit, the circuit court ruled:

> I think the intent of the requirement [in WIS. ADMIN. CODE § ATCP 134.06(4)(a)] is that the landlord needs to show

---

[6] The Honorable Michael A. Schumacher presided over the de novo hearing.

5

the tenant that damages in some fashion total at least $700. That's the point, it seems to me. In this instance, there wasn't an itemization, but an indication that one of the reasons was the water utility bills which exceeded $700. And so I think given those specific facts, there's no need to itemize anything beyond $700. It would be really useless information at that point. So I'm going to conclude that the security deposit documentation was sufficient under the circumstances.

¶13    The circuit court addressed the Roes' counterclaim regarding late fees, stating that because the parties stipulated to the late fees amount before the Roes actually paid anything, "I don't think the [Roes] suffered any damages, and for that reason the counterclaim is denied as well." The Roes now appeal.

## DISCUSSION

¶14    This case involves the interpretation and application of WIS. STAT. § 100.20(5) and WIS. ADMIN. CODE §§ ATCP 134.09(8)(c) and 134.06(4)(a). "The interpretation and application of a statute or code provision presents a question of law that we decide independently of the circuit court." *Boelter v. Tschantz*, 2010 WI App 18, ¶6, 323 Wis. 2d 208, 779 N.W.2d 467 (2009). Administrative code provisions and statutes are subject to the same principles of construction. *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶18, 290 Wis. 2d 421, 714 N.W.2d 130. That is:

> The purpose of statutory interpretation is to determine what a statute means in order to give the statute its full, proper, and intended effect. "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." Generally, language is given its common, ordinary, and accepted meaning. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes, and interpreted to avoid absurd or unreasonable results.

*Id.*, ¶16 (citations omitted).

¶15　WISCONSIN STAT. § 100.20(2)(a) states that the Department of Agriculture, Trade and Consumer Protection (DATCP) "may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." *See also* WIS. STAT. § 93.01(3) (defining "the department").  "Any person suffering pecuniary loss because of a violation by any other person of … any order issued under this section may sue for damages … and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee."  Sec. 100.20(5).  "This language provides a private remedy for consumers who fall victim to the unfair methods of competition and trade practices prohibited by, inter alia, general orders of the [DATCP] promulgated under § 100.20(2).  In other words, § 100.20(5) 'supplies the teeth' to the DATCP orders." *Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 2009 WI App 65, ¶9, 318 Wis. 2d 802, 767 N.W.2d 394.

¶16　WISCONSIN ADMIN. CODE ch. ATCP 134 was adopted under the authority of WIS. STAT. § 100.20 and it "applies to the rental of dwelling units located in this state," subject to exceptions not relevant to this appeal.  *See* WIS. ADMIN. CODE § ATCP 134.01.  "In unfair trade practices or unfair competition actions, the [party asserting the violation] has the burden of establishing a statutory violation to a reasonable certainty by clear, satisfactory and convincing evidence." *Snyder v. Badgerland Mobile Homes, Inc.*, 2003 WI App 49, ¶10, 260 Wis. 2d 770, 659 N.W.2d 887.

## I. Security deposit

### A. Heiman Violated WIS. ADMIN. CODE § ATCP 134.06(4)(a)

¶17    We start with the circuit court's decision to dismiss the Roes' counterclaim under WIS. ADMIN. CODE § ATCP 134.06(4)(a)[7] (hereinafter, "the withholding requirement"), which states:

> If any portion of a security deposit is withheld by a landlord, the landlord shall … deliver or mail to the tenant a written statement accounting for all amounts withheld. The statement shall describe each item of physical damages or other claim made against the security deposit, and the amount withheld as reasonable compensation for each item or claim.

¶18    The Roes contend that the withholding requirement mandates that landlords must list "each item or claim" and an "amount withheld" regardless of whether that amount exceeds the total amount of the security deposit. According to the Roes, the plain meaning of the withholding requirement "is that, when a landlord decides to retain a security deposit, nothing short of an itemized list will satisfy the provisions." The Roes argue that Heiman provided neither the amount of his claims nor whether his claims were enough to offset the value of the security deposit. The Roes further claim that even if the circuit court's analysis was correct—i.e., that a landlord need only list claims that match the security deposit amount—Heiman's five-day notice still violated the withholding

---

[7] The Roes do not argue that Heiman failed to send them the letter within twenty-one days after the Roes vacated the premises, as required by WIS. ADMIN. CODE §§ ATCP 134.06(2) and (3)(a). We will therefore assume without deciding that Heiman complied with the timing aspect of the withholding requirement.

requirement because it alleged only $486.51 for unpaid water bills, which is less than the $700 security deposit.[8]

¶19    Conversely, Heiman argues that the unpaid water bill—$1,083.16—exceeded the value of the security deposit—$700.  According to Heiman, the withholding requirement "does not require that [a] landlord provide a tenant with an exhaustive list of each item or claim the landlord may have against a tenant.  To the contrary, it requires that the landlord 'describe each item of physical damages or other claim *made against the security deposit*.'"  *See* WIS. ADMIN. CODE § ATCP 134.06(4)(a).  As such, Heiman argues that "once a landlord describes claims beyond the value of a tenant's security deposit, all additional claims are superfluous and fall outside the purview of the provision."  Further, Heiman contends that a landlord is required to inform a tenant only of the general amount withheld, as opposed to specific amounts.  Heiman asserts that he met this standard by stating in his letter the amount of the security deposit he was withholding as compensation.

¶20    We begin by analyzing whether the withholding requirement mandates landlords to list claims that exceed the amount of the security deposit.  WISCONSIN ADMIN. CODE § 134.06(4)(a) requires, "[i]f any *portion of a security deposit* is withheld … the landlord shall … deliver … a written statement *accounting for all amounts withheld*."  (Emphasis added.)  This language plainly mandates that a landlord must list all amounts that he or she is deducting from the

---

[8] Heiman does not contend that the complaint, its attachments, or the five-day eviction notice met the requirements of WIS. ADMIN. Code § 134.06(4)(a).  We will therefore assume without deciding that those documents did not meet the requirements of the withholding requirement.  Instead, our focus will be on whether Heiman's letter complied with the withholding requirement.

security deposit. We therefore agree with the circuit court and Heiman that a landlord is not required to list every amount of damages the landlord may later sue to collect. Instead, a landlord is required to list only those damages that make up the "portion of a security deposit" that is being withheld. *See* *id.*

¶21 With that conclusion in mind, we turn to whether, as Heiman contends, the withholding requirement requires a landlord to inform a tenant only of the general amount withheld, as opposed to specific amounts. Such an argument goes against the plain meaning of the withholding requirement. WISCONSIN ADMIN. CODE § ATCP 134.06(4)(a) requires that the withholdings statement "describe each item of physical damages or other claim made against the security deposit, and *the amount withheld* as reasonable compensation *for each item or claim*." (Emphasis added.)

¶22 Heiman's July 30, 2019 letter fails to state "the amount withheld" for: (1) unpaid water bills and (2) yard clean up. This failure is a clear violation of the withholding requirement.

¶23 Heiman's failure to state in his letter the amounts withheld for each claim is compounded by the fact that his five-day eviction notice listed the amount owed for the unpaid water bill at $486.51—significantly less than the security deposit amount of $700—adding confusion to the actual amount being withheld from the security deposit and the reason for the withholding. Exhibit 2 stated that the "city water bill" totaled $486.51 and that there was an unpaid "water bill on taxes" that totaled $365.57. Additionally, although Heiman argues on appeal that his letter implied that the water bill was more than $700—specifically, he argues that it was $1,083.16—that specific water bill amount was not determined until the de novo hearing.

¶24    Heiman's failure to comply with the Wisconsin Administrative Code made it more difficult for the Roes to determine the validity of Heiman's claims regarding their security deposit. *See* ***State v. Lasecki***, 2020 WI App 36, ¶32, 392 Wis. 2d 807, 946 N.W.2d 137 ("The independent requirement of providing a withholdings statement is the only means by which a tenant can learn why the landlord did not return some or all of the security deposit—short of the tenant either commencing litigation … or asking the DATCP to investigate."). The Roes therefore proved by clear, satisfactory, and convincing evidence that Heiman violated WIS. ADMIN. CODE § 134.06(4)(a).

### B.  The Roes Are Entitled to Damages under WIS. STAT. § 100.20(5)

¶25    WISCONSIN STAT. § 100.20(5) dictates that once a tenant demonstrates that he or she suffered a pecuniary loss because of a violation by his or her landlord, the tenant "shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." *See also* ***Armour v. Klecker***, 169 Wis. 2d 692, 698, 486 N.W.2d 563 (Ct. App. 1992) ("[I]f a court determines that a landlord has violated [WIS. ADMIN. CODE ch. ATCP 134], it is required under the plain unambiguous language of [§ 100.20(5)] to award double damages and attorney fees."). The dispute here requires us to answer two interrelated questions. First, did the Roes suffer a pecuniary loss, and second, if so, should the pecuniary loss be awarded independently of Heiman's damages award from the circuit court? In other words, are the Roes entitled to the calculation of their damages based upon Heiman's § ATCP 134.06(4)(a) violation regardless of the amount the court determined that they owed to Heiman? In analyzing these issues, we note that "remedial statutes should be liberally construed to suppress the mischief and advance the remedy that the statute

intended to afford." ***Benkoski v. Flood***, 2001 WI App 84, ¶8, 242 Wis. 2d 652, 626 N.W.2d 851.

¶26    The Roes argue that although they "may owe damages to Heiman in excess of their security deposit, they should still recover double damages, attorney fees, and costs for Heiman's" withholding requirement violation.  Conversely, Heiman contends that the Roes did not suffer a pecuniary loss because "there is a 'critical' difference between cases where landlords provide tenants with no written statement accounting for the amount withheld and when a landlord provides a tenant with a deficient written notice." *See **Pierce v. Norwick***, 202 Wis. 2d 587, 595, 550 N.W.2d 451 (Ct. App. 1996).  In the latter situation, Heiman argues that a "tenant's pecuniary loss only includes the amount of the security deposit which would remain after the offset for the landlord's actual damages."  According to Heiman, the Roes are not entitled to any damages because the circuit court determined that Heiman was entitled to $3,701.53—before attorney's fees and court costs—which is more than the $700 security deposit.  We conclude that the Roes suffered a pecuniary loss and are entitled to an evaluation of damages that is independent and separate from the amount Heiman was awarded.

¶27    In ***Moonlight v. Boyce***, 125 Wis. 2d 298, 299, 372 N.W.2d 479 (Ct. App. 1985), a landlord argued that a tenant did not suffer a pecuniary loss under WIS. STAT. § 100.20(5) where the landlord violated WIS. ADMIN. CODE § ATCP 134.06 "because the amount of damages [the landlord] was awarded on his counterclaim for damage to the apartment exceed[ed] the amount of the security deposit."  The landlord in ***Moonlight*** did not send a withholding statement within the required twenty-one-day period and instead retained the entire security deposit. ***Id.*** at 301.  We held that

12

> once it is determined that the landlord has violated the Wisconsin Administrative Code provisions for the return of a tenant's security deposit, the tenant suffers a pecuniary loss under [§ 100.20(5)] in the amount of the security deposit *regardless of the amount of damages the landlord may recover on a counterclaim*. The determination as to whether a tenant has suffered a pecuniary loss under [§] 100.20(5) and the amount of that loss must be made prior to and independent from any consideration of the landlord's counterclaim. We believe this result is commensurate with the purposes of the Wisconsin Administrative Code provisions [and § ]100.20(5) …. We are convinced that to hold otherwise would undercut the purpose of the Wisconsin Administrative Code provisions and [§] 100.20.

*Moonlight*, 125 Wis. 2d at 305-06 (citation omitted); *see also* *Benkoski*, 242 Wis. 2d 652, ¶¶24-29 (rejecting an argument by an owner of mobile home park that the circuit court erred by doubling plaintiff's loss under § 100.20(5) before subtracting fair market value of mobile home); *Paulik v. Coombs*, 120 Wis. 2d 431, 438-39, 355 N.W.2d 357 (Ct. App. 1984) (holding that "a tenant who prevails on a claim for double damages under [§ 100.20(5)] is entitled to reasonable attorneys fees even if he [or she] does not prevail on counterclaims for damages brought by the landlord").

¶28 Heiman contends that *Moonlight* is distinguishable from this case based on *Pierce*. In *Pierce*, within twenty-one days of their tenants' eviction, landlords sent a letter to the tenants "stating that the $1[,]000 security deposit would be withheld, showing a reconciliation of $1[,]000 in unpaid rent and $2[,]251.52 in additional damages." *Pierce*, 202 Wis. 2d at 591. At trial, the jury found that the landlords intentionally misrepresented or falsified their claims against their tenants' $1,000 security deposit in violation of WIS. ADMIN. CODE § ATCP 134.06(4)(b), and the jury further found that the landlords should have returned the entire security deposit. *Pierce*, 202 Wis. 2d at 591-92. The jury also

determined that the tenants owed the landlords $889 for unpaid rent and damages. *Id.* at 592. After the trial, the landlords argued that the tenants were entitled only to $111, which was the difference between the security deposit and the damages to the rental. *Id.*

¶29 We determined that, unlike the landlord in *Moonlight*, the landlords in *Pierce* did not fail to provide their tenants with a written statement accounting for the amounts withheld. *Pierce*, 202 Wis. 2d at 595. We concluded "that the method of damages calculation outlined in *Moonlight* should be confined to those instances where a landlord retains a security deposit and fails to provide an itemization of damages, in violation of WIS. ADMIN. CODE § ATCP [134.06 (4)(a)]." *Pierce*, 202 Wis. 2d at 595. Conversely, we held that

> [w]hen a landlord complies with the notification requirement and provides a tenant with a written statement accounting for any amount withheld from the security deposit, a later determination that the landlord has violated [§ ATCP 134.06(4)(b)] and misrepresented or falsified damages claims will result in a doubling of only that pecuniary loss which remains after an offset for the landlord's actual damages has been included.

*Pierce*, 202 Wis. 2d at 596.

¶30 We fail to see how the situation in *Pierce*, and not *Moonlight*, should control in the case at hand. Heiman did not violate WIS. ADMIN. CODE § ATCP 134.06(4)(b) like the landlords in *Pierce*, who misrepresented or falsely claimed damages, but nevertheless complied with § ATCP 134.06(4)(a) by stating in their letter to their tenants that the security deposit was being withheld because

14

of "$1[,]000 in unpaid rent and $2[,]251.52 in additional damages."[9]  *See Pierce*, 202 Wis. 2d at 591, 595.  The *Pierce* tenants were able to determine the nature and extent of the damages claimed and their validity based upon the information contained in the landlords' letter.  Instead, Heiman violated § ATCP 134.06(4)(a) like the landlord in *Moonlight*, as he failed to provide the Roes with a written statement accounting for the amounts withheld.  Thus, *Moonlight* clearly controls.  As such, the Roes proved by clear, satisfactory and convincing evidence that they suffered a pecuniary loss and we conclude that their damages should be calculated separately from Heiman's circuit court award. [10]

¶31     As we have stated previously, "We recognize that requiring a landlord to pay double damages and attorney fees when he [or she] believes he [or she] has a claim to the security deposit is harsh."  *See Armour*, 169 Wis. 2d at 701.  But, such a conclusion is dictated by the legislature, which gave regulating powers to the DATCP in order to "discourage the retention of security deposits except in the clearest of cases."  *See id.*  As such, we reverse and remand to the circuit court to calculate the Roes' damages resulting from Heiman's violation of

---

[9] It is unclear if the landlords in *Pierce v. Norwick*, 202 Wis. 2d 587, 591, 550 N.W.2d 451 (Ct. App. 1996), listed what the "additional damages" were.  In any event, the claim for unpaid rent encompassed the entirety of the tenants' security deposit.

[10] Because we find that language of WIS. STAT. § 100.20(5) to be unambiguous, we decline to address the public policy argument raised by Heiman.  *See Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶17, 290 Wis. 2d 421, 714 N.W.2d 130 ("[I]f a statute is ambiguous, we examine extrinsic sources, such as legislative history, to ascertain the legislative intent.").

WIS. ADMIN. CODE § ATCP 134.06(4)(a), in accordance with this decision and WIS. STAT. § 100.20(5).[11]

## II. Late fees

¶32    The Roes also counterclaimed that Heiman unlawfully calculated late fees under WIS. ADMIN. CODE § ATCP 134.09(8)(c), which states that "[n]o landlord may charge any tenant a fee or penalty for nonpayment of a late rent fee or late rent penalty."[12]    Both parties agree that Heiman violated § ATCP 134.09(8)(c) by compounding the late fees.    Therefore, the only remaining question is whether the Roes suffered a pecuniary loss under WIS. STAT. § 100.20(5).

¶33    The circuit court determined that the Roes did not suffer a pecuniary loss because the parties stipulated at trial to the amount of late fees and, therefore, the Roes never paid money to Heiman for the unlawfully compounded late fees. Heiman urges this court to adopt the same approach.

¶34    Conversely, the Roes contend they did suffer a pecuniary loss due to "out of pocket expenses relating to" their late fees claim, and they "urge [this court] to adopt a rule equating 'pecuniary loss' … with the amount of late fees

---

[11] Under WIS. STAT. § 100.20(5), and *Moonlight v. Boyce*, 125 Wis. 2d 298, 372 N.W.2d 479 (Ct. App. 1985), the Roes are entitled to a pecuniary loss of $1,400 (their security deposit, doubled).  Therefore, on remand, we specifically order the circuit court to calculate the remaining damages under § 100.20(5)—namely, the Roes' "costs, including a reasonable attorney fee."

[12] The Roes also argue that Heiman's late fee compounding violated the terms of the lease, and thus he violated WIS. ADMIN. CODE § ATCP 134.09(8)(a).  From our review of the record, the Roes did not raise this argument in the circuit court, and we will therefore not address it.  *See State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (noting that arguments raised for the first time on appeal are generally deemed forfeited).

actually requested by a landlord."[13]  According to the Roes, they had to take time off of work to attend court proceedings, they hired counsel, and they paid that counsel a $1,000 advance fee.  The Roes also note that they are responsible for their counsel's legal fees and that he spent 14.95 hours on the case before the parties stipulated to the late fees amount.  The Roes further argue that although they did not pay Heiman's unlawful late fees, the "fees functioned as an inducement for the Roes to catch up on their rent payments."  Lastly, the Roes contend that if Heiman is not penalized for his unlawful late fees, "a landlord would have nothing to lose by pursing a claim for illegal late fees in small claims court" as a collection strategy because such an interpretation would render WIS. ADMIN. CODE § ATCP 134.09(8) "effectively unenforceable."[14]

¶35     We previously analyzed the meaning of "pecuniary loss" as it relates to DATCP orders in *Kaskin*.  In *Kaskin*, a consumer took his truck into a repair shop. *Kaskin*, 318 Wis. 2d 802, ¶3.  The repair shop offered an estimate of one penny because it incorrectly assumed the truck was still under warranty.  *See id.* A week later, the truck was fixed but the repair shop billed the consumer $5,000. *Id.*, ¶5.  The repair shop would not return the truck until payment was received, so the consumer paid the bill.  *Id.*  The consumer then filed suit, asserting that the repair shop violated a DATCP order codified in WIS. ADMIN. CODE ch. ATCP 132

---

[13] Again, the Roes do not argue that they actually paid any of the unlawfully compounded late fees.

[14] The Roes also argue that we should apply "the established rule of *Moonlight* in calculating the resulting pecuniary loss prior to offsetting any damages owed to Heiman."  To the extent the Roes argue that we should grant damages for late fees "regardless of the amount of damages the landlord may recover on a counterclaim," *see Moonlight*, 125 Wis. 2d at 305-06, we need not reach that issue because we conclude the Roes did not suffer a pecuniary loss as it relates to the unlawful late fees.

that prevented repair shops from performing any repair not authorized by the consumer. *Kaskin*, 318 Wis. 2d 802, ¶¶6, 10. The circuit court granted the repair shop's summary judgment motion, concluding that the consumer did not suffer a pecuniary loss. *Id.*, ¶6. On appeal, we analyzed three other cases interpreting pecuniary loss, including *Moonlight*, and concluded that "where a general order promulgated by DATCP … prohibits the retention or receipt of the customer's money, the consumer suffers a pecuniary loss … in the amount that was wrongfully retained or received." *Kaskin*, 318 Wis. 2d 802, ¶24.

¶36 The Roes contend that *Kaskin* and *Moonlight* stand for the proposition that pecuniary loss may "involve no actual harm to the consumer in the end." According to the Roes, "the plaintiff [in *Kaskin*] could not be said to have suffered any actual loss … beyond being the victim of a violation of the Administrative Code." Further, the Roes claim that the tenant in *Moonlight* did not "suffer any out-of-pocket loss" because the tenant "lost his right to the security deposit because of damages owed [to] the landlord."

¶37 We disagree. *Kaskin* and *Moonlight* did involve harm to the consumer and tenant, respectively. In *Kaskin*, we held that "using the common understanding of the term 'because of,' we think that the 'monetary' or 'pecuniary' loss' *is clearly the amount suffered* to be paid as a result of the violation of the code." *Kaskin*, 318 Wis. 2d 802, ¶15 (emphasis added). In other words, the harm to the consumer was the unexpected charges for repairs and compelled payment for the same. *See id.*, ¶18. Similarly, in *Moonlight*, the pecuniary loss was the amount of the security deposit because it was already "retained" by the landlord, irrespective of the damages owed to the landlord. *See Moonlight*, 125 Wis. 2d at 307. As discussed earlier, while the question in *Moonlight* was framed as whether the tenant suffered a pecuniary loss, the main question answered in *Moonlight* was

whether the determination of if a pecuniary loss occurs is not affected by the fact that damages are owed to the landlord. *Id.* at 305-06. As such, we do not read *Kaskin* or *Moonlight* to say that pecuniary loss includes intangible harm to a victim of an administrative code violation.

¶38    *Kaskin* dictates the result in this case. A landlord must unlawfully "retain[] or receive[]" an amount of money from his or her tenants in order for the tenants to suffer a pecuniary loss for purposes of WIS. STAT. § 100.20(5). As such, we disagree with the Roes' contention that pecuniary loss is "the amount of late fees actually requested by a landlord" without actual payment of the unlawful late fees. Out-of-pocket expenses not paid to Heiman cannot be counted as a pecuniary loss.

¶39    The Roes also point to *Benkoski* in support of their position that we should adopt their proposed rule that pecuniary loss should be the amount of the landlord's unlawful claim, not the amount actually paid by the tenants. In *Benkoski*, we had previously determined that the owner of a mobile home park violated WIS. ADMIN. CODE ch. ATCP 125 by requiring the owner of certain mobile homes in the park to remove his mobile homes upon their sale. *Benkoski*, 242 Wis. 2d 652, ¶1. On remand, the circuit court found that the owner of the mobile home park "thwarted a potential sale" of one of the mobile homes for $6,500. *Id.*, ¶4. "After invoking the double damages provision of WIS. STAT. § 100.20(5), the court fixed [the plaintiff's] pecuniary loss arising out of the lost sale at $10,240." *Benkoski*, 242 Wis. 2d 652, ¶4. The court also awarded roughly $51,000 in attorney fees and $1,300 in costs. *Id.*

¶40    In affirming the circuit court's calculations, we found "additional support … in the law of contracts" and stated that the mobile park owner's "unfair

trade practices thwarting [the plaintiff's] potential sale caused damages akin to those caused by a breach of contract." *Id.*, ¶32. We cited WIS JI—CIVIL 3735 (1994), which states, in part, that

> [t]he measure of damages for a breach of contract is the amount which will compensate the plaintiff for the loss suffered because of the breach. A party who is injured should, as far as it is possible to do by monetary award, be placed in the position in which he or she would have been had the contract been performed.

*Benkoski*, 242 Wis. 2d 652, ¶32 (alteration in original; citation omitted). In all, "[w]e conclude[d] that the 'pecuniary loss' concept set out in WIS. STAT. § 100.20(5) is similar to this concept of damages set out in the law of contracts." *Benkoski*, 242 Wis. 2d 652, ¶32.

¶41 The facts in *Benkoski* are materially different than those in the case at hand. *Benkoski* dealt with the "Loss of Expectation" arising out of a situation "akin" to a breach of contract. *Id.* Thus, the plaintiff suffered a pecuniary loss because, had the owner of the mobile home park not violated WIS. ADMIN. CODE ch. ATCP 125, the plaintiff would have been able to sell one of his mobile homes for $6,500. *See Benkoski*, 242 Wis. 2d 652, ¶4. No such situation exists in this case. The Roes may have suffered costs and attorney fees, but they did not suffer anything close to a breach of contract like the breach in *Benkoski*. In other words, there is not a "net gain [the Roes] would have realized from the contract but for the failure of [Heiman] to perform." *See* WIS JI—CIVIL 3735. Therefore, the Roes are not "entitled to the benefit of [their] agreement" with Heiman, unlike the plaintiff in *Benkoski*. *See* WIS JI—CIVIL 3735.

¶42 Our conclusion that the Roes did not suffer a pecuniary loss is supported by the text of the statute, which, again, reads that a tenant "shall recover

twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." *See* WIS. STAT. § 100.20(5). Accordingly, "costs" and "attorney fee[s]" are separate and distinct from a "pecuniary loss." Thus, the former cannot be the same as the latter. The Roes' interpretation of the statute would mean that one suffers a pecuniary loss as a result of legal representation or costs alone. But the statute clearly states that attorney fees and costs can be awarded only upon a showing of a pecuniary loss. A tenant seeking damages under § 100.20(5) must demonstrate that he or she suffered a pecuniary loss, and based on that loss, the tenant may recover twice the amount of that loss, as well as costs and attorney fees. Therefore, the Roes did not suffer a pecuniary loss by paying attorney fees or by missing work to attend court.[15]

¶43 We further disagree with the Roes' reasoning that a landlord has "nothing to lose" by unlawfully charging late fees and then withdrawing the claim before payment is actually made. As Heiman correctly notes, a landlord can face criminal penalties for unlawfully charging late fees under WIS. STAT. § 100.26(3), which states that "[a]ny person who … intentionally refuses, neglects or fails to obey any regulation or order made or issued under … [WIS. STAT. § ]100.20, shall, for each offense, be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year or both." *See also **Lasecki***, 392 Wis. 2d 807, ¶63 (concluding landlord's violation of WIS. ADMIN. CODE § ATCP

---

[15] Even if we agreed with the Roes that missing work or paying attorney's fees could constitute a pecuniary loss, the Roes fail to explain how they missed work or paid attorney's fees only to contest Heiman's unlawful late fees. As Heiman argues on appeal, the Roes had to be in court if they wanted to contest the eviction and lawful damages sought by Heiman (e.g., unpaid rent) and were not present solely to contest Heiman's unlawful late fees. In fact, Kelly Roe testified at the de novo hearing that the Roes would have still sought legal counsel even if Heiman did not seek the unlawful late fees in his complaint.

134.06(4) "is a cognizable crime under Wisconsin law"). Thus, Heiman, or any other landlord, can be criminally charged for violations of WIS. ADMIN. CODE ch. ATCP 134 with or without a pecuniary loss to tenants actually occurring.[16]

¶44    The Roes further argue that the unlawful late fees acted as "an inducement for the Roes to catch up on their rent." This argument is underdeveloped and speculative. Heiman did, on two occasions, state in writing that he would forgive late fees if the Roes paid the rent they owed. But, the Roes do not point to any evidence in the record to show that Heiman's unlawful late fees actually induced them to pay overdue rent, and even if that evidence existed, the Roes fail to explain how that result constitutes a pecuniary loss. We will therefore not address this argument further. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

¶45    Lastly, the Roes argue that our interpretation of pecuniary loss in WIS. STAT. § 100.20(5) would violate the public policy behind the statute. *See Baierl v. McTaggart*, 2001 WI 107, ¶36, 245 Wis. 2d 632, 629 N.W.2d 277 ("[P]ermitting a landlord to enforce a lease containing the prohibited provision counteracts the larger goal of encouraging tenant enforcement of the administrative code to deter unlawful conduct on the part of landlords and to enforce public rights."). However, to allow the Roes to recover damages for Heiman's violation of WIS. ADMIN. CODE § ATCP 134.09(8)(c) would be to rewrite the Wisconsin Administrative Code because the Roes did not suffer a

---

[16] This analysis is in no way meant to assess Heiman's potential criminal liability, and we offer no opinion on that issue.

pecuniary loss. This we cannot do. *See United Am., LLC, v. DOT*, 2020 WI App 24, ¶16, 392 Wis. 2d 335, 944 N.W.2d, *aff'd*, 2021 WI 44, 397 Wis. 2d 42, 959 N.W.2d 317 38 ("We may not rewrite statutes; we must simply interpret them as they are written.").

¶46 No WIS. STAT. RULE 809.25 costs allowed to the parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.